O'NEILL v. JAMES.

1. NEGLIGENCE — PERSONAL INJURY — SALE OF EXPLOSIVE SUBSTANCE—QUESTION FOR JURY.

Where, in an action for a personal injury caused by the explosion of a bottle of champagne cider manufactured by defendant, the testimony for plaintiff tended to show that the explosion could not have occurred if the bottle had been charged in the usual way, and the testimony for defendant that it was so charged and that the explosion might have been otherwise caused, the issue of defendant's negligence was for the jury.

2. SAME—LIABILITY TO THIRD PERSONS—KNOWLEDGE OF DANGER —NECESSITY.

Where no contractual relations exist between the seller of an article of commerce, harmless in itself, and one who is injured thereby, as in the case of a manufacturer of champagne cider and a bartender who is injured by an explosion of an overcharged bottle thereof, there must be knowledge on the part of the seller of the danger, before he can be held liable.

Error to Houghton; Streeter, J. Submitted November 17, 1904. (Docket No. 104.) Decided December 22, 1904.

Case by Andrew R. O'Neill against Joseph James for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*Gray, Haire & Stone,* for appellant.

*P. H. O'Brien* and *W. A. Burritt,* for appellee.

MOORE, C. J. This is an action brought against the defendant to recover damages for the loss of an eye, which the plaintiff claims was caused by the negligence of the defendant. At the time of the injury the plaintiff was in the employ of his brother, in the capacity of bartender.

The defendant was a bottler of champagne cider, and had been for 20 years prior to the injury. The liquid was charged with carbonic acid gas. Some time prior to February 28, 1902, the defendant sold a quantity of champagne cider to the plaintiff's employer, and the cider, when delivered, was. put in the ice box. On the 28th day of February, 1902, the plaintiff took a bottle of said cider out of the ice box, and claims that while holding it in his hand, and before any force was applied to it, the bottle exploded, and was blown into a large number of fragments, and a piece of the glass from the bottle struck plaintiff in his eye and destroyed it. The plaintiff recovered a substantial judgment. The defendant has brought the case here by writ of error.

At the conclusion of plaintiff's proofs, and also when the testimony was all in, defendant asked the judge to direct a verdict. This the judge declined to do. A motion was then made for a new trial. In denying that motion, the trial judge states the theory of the parties substantially as follows:

"The pleadings which made the case, which was left to the jury, asserted on the part of the plaintiff that the defendant negligently had sent out an article, in itself dangerous, in place of one in itself safe; that the article furnished by the defendant was a dangerous explosive. The defendant in the case attempted to show that champagne cider—the liquid furnished by the defendant—was a non-intoxicating, harmless drink. The plaintiff made no attempt to show that any deleterious or poisonous substance was put into the liquid, so as to render it at all harmful as a drink; but the plaintiff introduced testimony which he claims tended to establish that the champagne cider sent out by the defendant had become a dangerous explosive, and that it had so become through the negligence of the defendant. The questions to be determined on this motion are whether there was evidence to sustain the case made by the pleadings on the part of the plaintiff, sufficient to cause the case to be submitted to the jury, and, if there was, whether the verdict of the jury is against the clear weight and preponderance of the evidence. Before the plaintiff rested, he introduced testimony to show that he

had sustained an injury by the explosion of a bottle of champagne cider which was manufactured and furnished by the defendant. There was also testimony on the part of experts, without objection on the part of the defendant, that champagne cider, manufactured in the usual way, with the ordinary pressure, was safe. There was also testimony that, if the pressure was increased beyond a certain limit, then the article became dangerous, and dangerous because of the likelihood of an explosion. The experts also testified that an explosion would not occur, under the circumstances as detailed in this case, unless the bottle had been overcharged, and would be likely to occur, had the bottle been overcharged.   *   *   *

"The defendant introduced testimony to show that he had been engaged in the manufacture of champagne cider for a long term of years; that he had never known a bottle to explode under similar circumstances to those testified to on the part of the plaintiff; that the gas with which the water used in making the champagne cider was charged was explosive. The defendant testified that he had never charged champagne cider at a pressure greater than sixty pounds for commercial purposes. His bottler (the one who charged the bottle which caused the injury to O'Neill) had been in his employ some ten years, engaged in the same work. The testimony on the part of the defendant and the testimony on the part of the plaintiff tended to show that the apparatus used by the defendant was the ordinary equipment of such establishments. The defendant urged that the testimony was uncontradicted that no champagne cider was ever bottled by him for sale at a pressure higher than sixty pounds to the square inch, and that there was no evidence whatever of any negligence on the part of the defendant. While the testimony of the defendant and of his bottler was positive that no champagne cider had ever been bottled for sale at a higher pressure, if there were other testimony in the case from which a jury might reasonably infer that this pressure had been exceeded, the question became one which ought to be submitted to the jury for its decision. Opposed to this testimony was the testimony ot the experts, in which they maintained that the explosion could have occurred for no reason other than an overcharge."

It was the claim of defendant the explosion, instead of

being caused by an overcharge, might have been caused as follows:

1. The contact of the human hand with the cold bottle taken from the ice box, upon a small area of the cold glass, would have caused a sudden expansion of the small area of the glass, and a consequent cracking of the bottle.

2. The warm air of the room might have caused the same result, independent of the hand.

3. The pressure brought to bear upon the bottle by inserting its neck into the socket of the corkscrew, or by striking the bottle on the corkscrew.

4. Perchance a cracked bottle from some other cause.

5. A bottle inherently weak by reason of varying thickness of glass, or the like.

We think, with reference to the question of negligence, the court was right in holding that, in view of the testimony upon this branch of the case, the issue should be submitted to the jury. See *Merryman* v. *Hall*, 136 Mich. 296; *Schoepper* v. *Chemical Co.*, 113 Mich. 585.

There is, however, a much more serious question in the case. The testimony on both sides is that champagne cider, bottled in such bottles as were used by defendant, at a pressure of 60 pounds or under, is a harmless ordinary article of commerce, usually kept for sale where soft drinks are sold. The record also discloses that defendant did not himself charge the bottle which did the mischief. There is nothing to indicate he ever saw it. The testimony of the bottler is that it was charged in the usual way, and sent out in the usual course of trade, and that he had no knowledge that it was improperly charged. Indeed, his testimony is that it was not improperly charged. There is no testimony tending to establish that defendant had any knowledge that the bottle was overcharged when it left his place of business, or from which an inference could be properly drawn that he had such knowledge. Under this state of facts, counsel for defendant claim:

"The point we raise is that where one is engaged in the manufacturing and selling of an article of commerce harmless in itself, as the proofs show that champagne

cider is, when manufactured and bottled in the ordinary manner, he cannot be held liable to a third person, who stood in no privity of contract with him, because per-chance one bottle did, for some reason, burst, in the absence of proof of knowledge of vendor of the defect."

In reply to this claim, counsel for plaintiff say:

"The defendant contends that the plaintiff cannot recover because there was no contractual relation between the parties. It seems to us that it is a sufficient answer to this contention to say that if the defendant knowingly or negligently sent out an article which was of itself a dangerous explosive, and it exploded in the hands of the plaintiff, and injured him, without fault on his part, the defendant is liable, whether there was any contractual relation between the parties or not. If the defendant knew the bottle to be a dangerous explosive, or by proper care on his part could have known it, he is liable. The duty of the defendant was not a duty which he owed to the purchaser only, but which he owed to every person in whose hands the article might pass—a duty which he owed the public."

Plaintiff cites a number of cases in support of his proposition, the first of which is *Weiser* v. *Holzman*, 33 Wash. 87. This case arose on demurrer, and we quote from it at length:

"The next question is, Does the complaint state facts sufficient to constitute a cause of action? Stripped of its verbiage, the complaint alleges that the respondents manufactured, sold, and delivered to one Pratt, under the name of 'champagne cider,' a dangerous explosive, knowing it to be such, without warning Pratt of its dangerous character, or placing on the bottle containing the substance anything to indicate that it was a dangerous explosive, and that the appellant, while in the employ of Pratt, and engaged in his duties as such employé, and without fault or negligence on his part, was injured by an explosion of the substance. Paragraph 5 of the complaint was as follows:

"'That the injuries to said plaintiff were caused by the willful negligence, carelessness, and want of proper care on the part of the defendants, D. Holzman & Co., by reason of said defendant willful-

ly, carelessly, and negligently, and for want of ordinary care in the manufacturing, bottling, preparing, and selling of said champagne cider, in this: That the said defendants failed to manufacture, bottle, and prepare the said champagne cider in the proper degree of temperature; failed to properly charge the said champagne cider with the proper amount of carbonic acid gas and other substances used in the manufacturing and bottling of the same; failed to properly test said bottle as to its strength and endurance to hold said champagne cider; failed to properly label said bottle as to its being an explosive and dangerous substance; failed to explain to the said M. L. Pratt, or said plaintiff, or any one else, of the danger in handling and using said bottle of champagne cider, and the cause for and probability of its exploding and injuring those who came in contact with the same.'

"The prayer was for damages in the sum of $10,000. The record does not advise us as to the ground upon which the trial judge sustained the demurrer, but the respondents urge against its sufficiency two principal contentions, the first of which is that the allegations of negligence are so indefinite as to be meaningless, and the second that there is no causal connection between the negligence alleged (conceding the allegations sufficient) and the injury complained of. The argument that the allegations of negligence are so indefinite as to be meaningless is based upon recitals in the paragraph above quoted. It seems to us, however, that the complaint states a cause of action without that paragraph, and hence it is not very material to inquire just how definite this particular one should have been made; but, conceding it otherwise, we do not think the allegations susceptible to a general demurrer. Clearly, the acts recited therein, when taken with the other acts recited in the complaint, constitute actionable negligence; and, if more particularity of statement was desired and could be required, the remedy was by a motion to make more definite and certain, not by a general demurrer.

"The second objection seems to us to be equally without merit. One who sells and delivers to another an article intrinsically dangerous to human life or health, such as a poison, an explosive, or the like, knowing it to be such, without notice to the purchaser that it is intrinsically dangerous, is responsible to any person who is, without fault on his part, injured thereby. The rule does not rest upon any principle of contract or contractual relation existing between the person delivering the article and the person injured, for there is no contract or contractual relation

between them. It rests on the principle that the original act of delivering the article is wrongful, and that every one is responsible for the natural consequences of his wrongful acts. The rule that liability exists in such cases is abundantly supported by authority. In *Thomas* v. *Winchester*, 6 N. Y. 397, it was held that a manufacturer of drugs, who had sold a druggist extract of belladonna under the label ' Extract of Dandelion' was liable to a person injured thereby, who had procured it of the druggist on a physician's prescription calling for extract of dandelion; it appearing that neither the druggist, nor the person taking it, knew that it was other than it was labeled. In *Norton* v. *Sewall*, 106 Mass. 143, it was held that an apothecary who had negligently sold a deadly poison for a harmless medicine called for was liable for the death of the purchaser's servant, to whom it was administered, at the suit of the servant's administrator.

"In *Wellington* v. *Downer Kerosene Oil Co.*, 104 Mass. 64, the principle governing the liability was stated in the following language:

" ' It is well settled that a man who delivers an article, which he knows to be dangerous or noxious, to another person, without notice of its nature and qualities, is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom, to that person or any other, who is not himself in fault.'

" So in *Lewis* v. *Terry*, 111 Cal. 39, it was said:

" ' We agree that the action cannot be sustained on the ground of any privity of contract between plaintiff and defendants, for there was none. If a tradesman sells or furnishes for use an article actually unsound and dangerous, but which he believes to be safe, and warrants accordingly, he is not liable for injuries resulting from its defective or unsafe condition to a person who was neither a party to the contract with him, nor one for whose benefit the contract was made. * * * But when the seller, as in the case made by the complaint before us, represents the article to be safe for the uses it was designed to serve, when he knows it to be dangerous because of concealed defects, he commits a wrong independent of his contract, and brings himself within the operation of a principle of the law of torts.'

"See, also, 1 Shearman & Redfield on Negligence (5th Ed.), § 117; *Blood Balm Co.* v. *Cooper*, 83 Ga. 457;

*Schubert* v. *J. R. Clark Co.*, 49 Minn. 331; *Bishop* v. *Weber*, 139 Mass. 411; *Elkins* v. *McKean*, 79 Pa. St. 493; 12 Am. & Eng. Enc. Law (2d Ed.), p. 508, subd. 6."

It will be observed that, where no contractual relations exist, the doctrine is recognized that there must be knowledge of the dangerous character of the thing sold, before defendant can be held liable, and this doctrine is recognized in all the cases to which our attention has been called. Counsel for defendant cite many cases in their brief in support of their contention. We deem it necessary only to cite *Guinea* v. *Campbell*, 22 Quebec Official Law Rep. 257, and *Glaser* v. *Seitz*, 71 N. Y. Supp. 942. We quote from the last-named case:

"Siphons of seltzer water, like the one that exploded, are in common use, and have been manufactured and sold in this city and elsewhere for many years. They are certainly in as common use as steam boilers and gas, and an explosion of a steam boiler or of gas does not necessarily create an inference of negligence sufficient to fix liability on the defendant. The plaintiff, even in such cases, must go further, and prove affirmatively the existence of some defect in construction or condition of the thing which contains the gas or steam, of which the defendant was cognizant, or which he ought to have known by the exercise of proper care in the premises. There is no evidence in this case that the bottle, which was not manufactured, but filled, by the defendant, was not properly constructed, or that it was constructed differently from bottles in which seltzer water is usually sold. Nor is there any evidence that the manner of putting the water in was different from the method in common use, or that the character of the liquid was different from that usually put into such bottles. Gunpowder, dynamite, turpentine, gas, fireworks, and many other explosives are used in the community as merchandise necessary in proper places and for certain purposes; and no one can contend that the sale of these commodities constitutes negligence on the part of the vendor, when the articles are sold by their proper name, indicating their character. There are cases in the books where articles have been sold as apparently harmless, and have turned out to be dangerous and inflicted damage, and the vendor has in consequence been held liable. For

example, where naphtha, which is of an explosive character, was sold for oil, and injury resulted. There the defendant was held liable for the deceit. There is no pretense in this case that the siphon of the seltzer water sold was misnamed, or that any deceit was practiced on the plaintiff. Indeed, it was an ordinary, well-known article of merchandise, sold in large quantities every day. It is common knowledge that bottles containing seltzer or vichy water or champagne or ginger ale or cider will sometimes explode, and that barrels containing cider may explode. But it does not necessarily follow that the vendor of these commodities in such bottles or barrels is liable for the explosion, in the absence of misconduct on his part, which misconduct must be affirmatively proved. For want of such proof, the complaint must be dismissed. Complaint dismissed."

The plaintiff knew that champagne cider, as ordinarily manufactured and sold, was charged with a gas. As we have before stated, there is no proof from which the inference might be drawn that defendant had knowledge that the bottle was improperly charged. The proof offered on the part of plaintiff, as well as that offered on the part of defendant, is that the apparatus used by the employés was a proper one. Under the facts disclosed by the record, a verdict should have been directed in favor of defendant.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.