## WHEELER *v.* LAUREL BOTTLING WORKS.

[71 South. 743.]

1. NEGLIGENCE. *Evidence. Sufficiency. Duties. Bottling liquids. Res ipsa loquitur.*

   In a suit against a bottling company for damages caused by the bursting of a bottle filled with liquid, the evidence was insufficient to establish liability where it left the cause of the explosion to speculation merely indicating that some bottles were defective, but failing to identify the one which exploded.

2. NEGLIGENCE. *Duties. Bottling liquids.*

   The manufacturer or vender of bottled liquids which are not highly explosive or dangerous, must take reasonable precaution that the bottles are sufficient for the purpose for which they are used.

3. NEGLIGENCE. *Evidence. Res ipsa loquitur.*

   The doctrine of *res ipsa loquitur* does not apply where a bottle of coca-cola exploded when the vendee was removing it from an ice box, but such was an unforseen accident, for which there was no liability.

4. NEGLIGENCE. *Evidence. Sufficiency.*

   The fact that one of its bottles exploded while being taken from an ice box is not sufficient of itself to charge a bottling company with conducting its business in an unsafe or unusual way or of using unsafe appliances.

APPEAL from the circuit court of Jones county.

HON. J. M. ARNOLD, Judge.

Suit by John S. Wheeler against the Laurel Bottling Works. From a judgment on peremptory instruction, for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*B. A. Boutwell* and *Pack & Collins,* for appellant.

*Deavours & Hilbun* and *Shannon & Schauber,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellant instituted this action against appellee to recover damages alleged to have been sustained for the loss of one of plaintiff's eyes. Mr. Wheeler, the appellant, was the owner of a restaurant in the city of Laurel, Miss., and at his restaurant, among other things, he sold soft drinks, including bottled Coca-Cola, which was manufactured, bottled, and sold by appellee. He kept the bottled drinks in an ordinary ice box, the top or lid of which opened upwards and worked or hung upon hinges at the back of the box. It appears that appellant kept his restaurant open all night, and some time after one o'clock in the night he went to the ice box to see about his Coca-Cola, and, on lifting the lid of the box, a bottle of Coca-Cola exploded, projecting a small piece of glass into the right eye. From the injury thus inflicted it became necessary to remove the eyeball. It was the custom of appellant to place fifty pounds of ice in the box, and then to stack about four dozen bottles of Coca-Cola upon and around this ice. The declaration is in four counts. The first is based upon the alleged negligence of the defendant in overcharging the bottles with too much carbonic acid gas; the second, in using defective and dangerous bottles; the third, on the alleged failure of the defendant to test or inspect the

bottles; and the fourth, upon the general negligence alleged in making use of defective bottles, knowing them to be defective. The cause proceeded to a trial, and at the close of the plaintiff's testimony the court sustained the motion of the defendant to exclude the evidence and to grant the defendant a peremptory instruction.

The evidence shows that the bottle of Coca-Cola that caused the injury was bottled by appellee at its regular bottling works in the city of Laurel. It is further shown that appellee made use of two kinds of bottles, one what is termed a "light-colored" and the other a blue bottle. One witness, a discharged employee of appellee, testifies that many of the light-colored bottles were defective. The substance of the testimony of this witness is that these bottles were thinner than the blue bottles; that many of them had thin places in them; that the company would sell to the retail trade in cases of twenty-four bottles each, making delivery by means of a truck or conveyance owned and operated by appellee; that in hauling the bottles for delivery they would frequently burst in the case, and that customers frequently required the agent of appellee to make good certain bottles which would be found to be broken when taken out of the case in the usual course of the customer's business. This witness, Tillis Walters, had driven for some months the delivery wagon of appellee, loading the wagon in the morning and returning some time that day either for a new load or to leave the conveyance at the plant of appellee during the night. In making his reports he would account for the bottles charged to him when he would start out with a load, and sometimes he would be allowed credit for broken bottles. The witness furthermore testifies that he himself had no practical experience in bottling Coca-Cola, but that he understood that the pressure put upon the bottles when filled was supposed to be about sixty pounds. He further says that sometimes the pressure would crush a bottle in

the process of filling. The witness further testifies that he commented upon the frequent breaking of the light-colored bottles in a conversation with a Mr. Richards, the manager and bookkeeper. The evidence of this witness that appellee was supposed to use sixty pounds' pressure in the process of bottling was the only testimony as to how much pressure was in fact put on the bottles, and witness further indicates that, so far as he knew, there was no one designated by appellee to test the bottles. Witness on cross-examination admits that if a bottle is defective it will generally crush in the process of attempting to fill it. There were only three witnesses introduced for the plaintiff, Mr. Walters, the former driver of appellee's wagon, a Mr. Deloney, an employee of appellant, and the appellant himself. There is no proof, of course, as to which particular bottle exploded, and there is no testimony showing exactly what caused the explosion. There is no proof that appellee did not make use of the usual and ordinary method of bottling Coca-Cola.

The question for decision, therefore, is whether negligence on the part of appellee is shown or proved. There are very few reported cases of the kind now under review, and no previous case of this kind by our own court has been cited by counsel for either side. A case very similar to the one at bar is that of *Guinea et al.* v. *Campbell,* 22 Quebec Official Law Reports 257, in which Judge Archibald, among other things, says:

"It is proved that glass is not a substance that becomes weakened by use, unless from the application of some physical force it is cracked. If it were cracked at the time of filling, the proof shows that it would explode in that operation, and so if the crack occurred at any time when the pressure existed within, it would immediately explode. I am driven to the conclusion that when the bottle in question was placed in her refrigerator by the plaintiff, it was sound and strong enough to support the pressure of the liquid. What then could

have caused the explosion? The forces of nature as to the contractions and expansion of bodies by change of temperature are practically irresistible. Thus most of us have seen vessels burst, stonework thrown out of place, etc., by the expansion that takes place in the conversion of water into ice. So we have seen glass vessels broken by putting hot water within them, and in this case the thicker the glass the more likely the breakage. The cause of this phenomenon is that glass is in a high degree unelastic. When hot water is put into a tumbler it quickly raises the temperature of that portion of the glass with which it is in contact and causes expansion, while the outer surface of the tumbler remains unaffected. If the expansion of the inner surface proceeds beyond the degree of elasticity, breakage must occur. Where the glass is thin, changes of temperature, either from within or without, pervade almost immediately the whole substance of the glass, and thus breakages from that cause are much rarer. In the present case the proof shows that the bottle in question was placed in the refrigerator immediately under the ice box, which was very copiously supplied with ice. It may easily be assumed that the bottle was at a low pressure. On the other hand, the day was warm, and when the refrigerator door was opened, air of a much higher temperature would come in contact with the bottles, and would raise the temperature of the outer surface of the glass, while the inside was kept cold by the liquid within, and the law of nature above referred to had its effect. . . . It [the law] recognizes facts as being caused by inevitable accident, and it relieves from responsibility when such has been the case. . . . In consequence, I am of the opinion that the accident, if not due to the imprudence of the plaintiff in cooling the bottle too much and then exposing it to a current of warm air, was due to an inevitable accident for which defendant is not liable."

We think the case from which we have so freely quoted is a well-reasoned case, and one that announces a sound principle. While there are general statements by the witness Walters that the light-colored bottles used by appellee were defective, yet an analysis of the entire deposition of this witness convinces us that the defect upon which the witness lays so much emphasis was the thinness of the bottle that would cause it to break in transportation. The plaintiff, therefore, in attempting to reach the jury with his case is compelled almost altogether to rely on the doctrine of *res ipsa loquitur.* Just what caused the explosion in the instant case is a matter largely of speculation. The bottles were piled on and around the large cake of ice, and it is possible that when plaintiff raised the lid of the ice box, the slight jar might have caused the bottles on the melting ice to slip or readjust themselves. It may be that the inrush of the warm air of a June night might have caused a rapid expansion of the glass. If the glass of the particular bottle was a thin glass, which the witness Walters complains of breaking so easily, then, as suggested by Judge Archibald, such bottle would have more likely accommodated itself to the rapid process of expansion than would a thicker glass. It has been expressly held by the courts to be common knowledge that bottles containing seltzer or vichy water or champagne or ginger ale or cider sometimes explode, and that it does not necessarily follow from the act of explosion itself that the vender is liable. The true rule seems to be that the manufacturer or vender must take reasonable precaution that the receptacles are sufficient for the purpose for which they are used. This is not a case where highly explosive, dangerous or noxious products are sold to a vendee without notice of the nature or quality of the product sold. In the case of *Glaser* v. *Seitz et al.,* 35 Misc. Rep. 341, 71 N. Y. Supp. 942, involving the explosion of a siphon of seltzer water, the court says:

"It is common knowledge that bottles containing seltzer or vichy water or champagne or ginger ale, or cider will sometimes explode, and that barrels containing cider may explode. But it does not necessarily follow that the vender of these commodities in such bottles or barrels is liable for the explosion, in the absence of misconduct on his part, which misconduct must be affirmatively proved."

The only case that appears to support the contention of appellant is that of *Payne* v. *Rome Coca-Cola Bottling Company,* 10 Ga. App. 762, 73 S. E. 1087, but it is to be observed that the court, in concluding the opinion in that case, does not decide whether the mere explosion itself would be sufficient. On this point the opinion says:

"As to whether an inference of negligence would arise against the manufacturers upon mere proof of the explosion, without more, we express no opinion."

We do not think the doctrine of *res ipsa loquitur* applies in this case. The bottle at the time of the injury was not under the control or management of the manufacturer. The unfortunate occurrence appears to be one of those unforeseen accidents for which appellee under the facts of this case should not be held liable.

The proof is not satisfying that appellee made use of bottles that were too weak to stand the pressure put upon them in the ordinary process of bottling, and this one instance of a bottle bursting under the circumstances disclosed by this record is, in itself, not sufficient to charge appellee with conducting its business in an unusual or unsafe fashion or making use of unsafe appliances. There is too much conjecture about the whole case to upset the ruling of the trial court in granting the peremptory instruction.

*Affirmed.*