PESAVENTO *v.* E. I. DU PONT DE NEMOURS & CO.

1. NEGLIGENCE—LIABILITY OF SELLER OF ARTICLE WITH KNOWLEDGE THAT IT IS IMMINENTLY DANGEROUS—CONTRACTUAL RELATIONS. Where the seller knows that an article is imminently dangerous, and with such knowledge sells and delivers it to another without informing him of its dangerous character, he is guilty, not of negligence, but of an intentional wrong for which he is liable to any one injured by its use regardless of contractual relations.

2. EXPLOSIVES — LIABILITY OF SELLER OF DEFECTIVE FUSE — CONTRACTUAL RELATIONS. Where the seller of a defective dynamite fuse received it from the manufacturer and delivered it to a mining company in the original package, without knowledge of its defective condition, it was not liable to an employee of the mining company who was injured by using it; liability in such case being limited to the purchaser.

Error to Gogebic; Driscoll (George O.), J. Submitted June 17, 1927. (Docket No. 73.) Decided October 3, 1927.

Case by Domenic Pesavento against E. I. Du Pont de Nemours & Company for personal injuries. Judgment for defendant *non obstante veredicto*. Plaintiff brings error. Affirmed.

*E. W. Massie,* for appellant.

*C. M. Humphrey, A. W. MacLeod,* and *J. P. Laffey,* for appellee.

MCDONALD, J. This action was brought to recover damages for personal injuries sustained by the plaintiff while he was using fuse to explode a charge of

¹Negligence, 29 Cyc. pp. 479, 484; 11 R. C. L. 701; 2 R. C. L. Supp. 213; ²Id., 29 Cyc. p. 482.

dynamite in the mines of the Newport Mining Company where he was employed. The plaintiff and two other workmen who were engaged with him at the time of the accident were experienced miners. They were cross-cutting underground. They had drilled 8 holes from 5½ to 6 feet deep into which they had placed dynamite cartridges, and to each of which was attached the cap and 6 feet of fuse. The fuse was furnished by the defendant company with the representation that it was water proof and would burn at the rate of 2 feet to the minute with a 10% variation, that is 6 feet of fuse would require 3 minutes to burn. After the plaintiff had placed the dynamite in each of the 8 holes he proceeded to ignite the fuse by using a carbide lamp which he carried on his cap. While he was lighting the fuse in the 6th hole there was a premature explosion from the second, as a result of which he suffered serious injuries. It is his claim that the premature explosion was caused by a defective fuse; that the fuse was soft, had black spots on it, and was "swelled up a bit," indicating that it had been improperly manufactured or had been negligently handled by the defendant; and that because of these defects in the fuse it did not burn at the rate of two feet to the minute as the defendant represented, but burned from end to end almost instantaneously.

The defendant is a corporation engaged in the business of manufacturing and selling dynamite, powder, percussion caps, and fuse at the city of Ironwood, Michigan. It sold the fuse in question to the Newport Mining Company for use in its mining operations. It does not manufacture the fuse which it sells, but purchases it from the Ensign-Bickford Company, a reputable manufacturer of fuse in Simsbury, Connecticut. The fuse is received from the manufacturer in car lots and is delivered by the defendant to the mining companies in the original packages. It is shipped in

boxes made of white pine lumber, matched, grooved and tongued. Each box contains 60 rolls 100 feet in length. Each roll is wrapped in glazed paper. The defendant did not inspect the fuse before delivering it to the mining company, and made no inspection at the place where it was manufactured. The defendant denies that the fuse was defective; denies that it was its duty to inspect; denies that it was negligent; and makes the defense that, having purchased the fuse from a reputable manufacturer and delivered it in the original package without knowledge or notice of any defect therein, it is not liable in this action.

At the close of the plaintiff's case and again when all the proofs were in, the defendant moved for a directed verdict. The court reserved his decision under the statute, and, after a verdict of $3,000 for the plaintiff, entered judgment *non obstante veredicto* for the defendant. The plaintiff has brought error.

The facts are not in dispute. It must be conceded that the fuse was defective and that it was the proximate cause of the plaintiff's injury. The question is one of law, viz., whether the defendant, the vendor of the fuse, is liable for the injuries of one with whom it had no contractual relations.

"The tendency throughout the United States is, with but few exceptions, to regard the act of sale as terminating all liability on the part of the maker or vendor of a defectively constructed article or structure, unless the article is either a drug, chemical, or explosive and so 'imminently dangerous to human life,' or the defect is known to and concealed by the vendor." Bohlen, Studies In The Law of Torts, p. 109.

In *Huset* v. *Case Threshing Machine Co.,* 120 Fed. 865 (61 L. R. A. 303), the court had under consideration the liability of manufacturers and vendors to third parties for negligence in the manufacture and sale of articles. Judge Sanborn, who wrote the opinion, after

reviewing the leading English and American cases on the subject, stated the following general rule:

"The general rule is that a contractor, manufacturer, or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of the articles he handles."

To this general rule he said there were three exceptions "as well defined and settled as the rule itself."

"The first is that an act of negligence of a manufacturer or vendor which is imminently dangerous to the life or health of mankind, and which is committed in the preparation or sale of an article intended to preserve, destroy or affect human life, is actionable by third parties who suffer from the negligence. * * *
"The second exception is that an owner's act of negligence which causes injury to one who is invited by him to use his defective appliance upon the owner's premises may form the basis of an action against the owner. * * *
"The third exception is that one who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there was any contractual relations between the parties or not."

The first exception has reference to the manufacture or sale of drugs, chemicals, explosives, and foodstuffs, which the law arbitrarily places in a class by themselves. The article in question does not belong to that class. The second exception has no application. The third makes liability depend upon knowledge of the vendor that the article sold is imminently dangerous to life or limb. This exception has been followed in Michigan. In *O'Neill* v. *James,* 138 Mich. 567 (68 L. R. A. 342, 5 Ann. Cas. 177, 110 Am. St. Rep. 321), it was said:

"It will be observed that, where no contractual relations exist, the doctrine is recognized that there must

be knowledge of the dangerous character of the thing sold, before defendant can be held liable, and this doctrine is recognized in all the cases to which our attention has been called."

The true basis for liability, where knowledge is required, is not negligence at all, but intentional wrong. When a vendor knows that an article is imminently dangerous, and with such knowledge sells and delivers it to another without informing him of its dangerous character, he is not guilty of negligence, but of an intentional wrong for which he is liable to any one injured by its use regardless of contractual relations. In such a case contractual relations are immaterial. The liability is apart from the contract. So in the instant case, if the defendant had sold and delivered this fuse to the mining company, knowing that it was defective and for that reason dangerous, and had failed to inform the mining company of the defect, it would be liable to the plaintiff who was without fault in using it. Without knowledge of the defect its only liability would be on the contract to the purchaser. It does not appear that the defendant knew of the defect in the fuse. The evidence is clear that it had no such knowledge. It received the fuse from the manufacturer and delivered it to the mining company in the original package. It was liable on its contract to the purchaser and to no one else.

The judgment of the circuit court is affirmed, with costs to the defendant.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.