MACRES v. COCA-COLA BOTTLING CO., INC.

NEGLIGENCE—LIABILITY OF MANUFACTURER—SOFT DRINKS—EXPLO-
SION OF BOTTLE.
    Manufacturer of a soft drink *held,* liable for injuries sustained
        when plaintiff, an employee in a restaurant, suffered a cut on
        the face when a bottle of defendant's product exploded in an
        icebox as she opened it to get some other goods therefrom for
        a customer about an hour after defendant's product had been
        placed therein, some several hours after having been delivered
        to the restaurant.

Appeal from Wayne; Campbell (Allan), J. Submitted June 9, 1939. (Docket No. 57, Calendar No. 40,484.) Decided October 20, 1939.

Action by Mary Christine Macres, a minor, by George Macres, her next friend, against Coca-Cola Bottling Company, Inc., a Michigan corporation, for damages for personal injuries sustained by the explosion of a charged bottle. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Frank T. Hinks* and *Walter M. Nelson,* for plaintiff.

*Knight & Panzer,* for defendant.

BUSHNELL, J. Plaintiff was employed by her uncle as a waitress in his restaurant in Detroit. Bottled soft drinks, ready to be served to customers of the restaurant, were kept in a box refrigerator with a sliding top and packed in chopped or cracked ice. The owner of the restaurant testified that he had always bought his Coca-Cola from the defendant, with whom he had been doing business for 20 years; that on July 9, 1937, a supply of Coca-Cola was delivered between 11 and 12 a. m., and he put the bottles in the icebox himself about 2:30 p. m., and filled up the box with chopped ice. About an hour later, plaintiff went to the icebox to get a bottle of orangeade for a customer and, as she bent over the opened box, a bottle of Coca-Cola exploded. A portion of the bottle hit her in the head, leaving a scar on her face running into the eyebrow. The cap remained on the broken neck after the explosion, the other part of the bottle being still in the icebox. Plaintiff saw the broken bottle before it was taken away the next day by the same driver who made the delivery and testified that it was broken horizontally two inches below the cap. The broken bottle was not produced at the trial.

A customer testified that he heard the sound of the explosion and saw the cut on plaintiff's face, but he did not see the broken bottle. Plaintiff produced

a soft drink manufacturer who testified as to the method generally used in charging bottled drinks with carbonic gas, $CO_2$. The superintendent of defendant's company testified in detail as to the method actually used in charging bottled Coca-Cola by this defendant. A research engineer of the Owen Illinois Glass Company, from whom defendant purchased its bottles, told how they were manufactured and explained how bottles fracture under pressure.

The trial court submitted the claim for damages to the jury on both of plaintiff's theories, namely, implied warranty and negligence, charging the jury as to the first:

"Now, in order to recover on this count it is essential that you be satisfied that the commodity itself is or was or ought to have been known to be dangerous in its very character. There are certain things like a steering gear and the wheels of an automobile, which if they are defectively constructed present a danger to the public, if they are not properly constructed or not properly made use of or prepared for public use and that is the theory on which the plaintiff seeks to recover, one of the theories."

And as to the second as follows:

"You are not at liberty to guess at the negligence but the plaintiff has submitted to you testimony which if you accept it, may lead you to the conclusion that there was an explosion here, something resulting from an internal pressure and if that was so, the next question to be answered is, was it due to some negligent act on the part of the bottler that this explosion occurred and if you answer that question in the affirmative, then you would find for the plaintiff on this count."

The court added the following:

"Now, as to the first, going back for a moment to the first count, the dangerous character of this par-

ticular commodity is something that I am leaving for your consideration. If it is inherently dangerous, then the vendor or seller, if the danger was of such a character that the vendor or seller must have known of that, then he could be held liable on this implied warranty of safety to the public. The law itself is not too clear and I am doing the best I can to explain it as I understand it from the cases that have been handed down. * * *

"Many accidents happen, many injuries are received by people without anybody else's fault and if in your examination of all these facts and circumstances, you arrive at the conclusion that the defendant here used those reasonable precautions which are commonly used in a similar business and that there was nothing to apprize them of a situation such as this, so that they could not be asked to take added or extra precautions, then obviously they would be conducting themselves as reasonably prudent persons under the circumstances and there would not be any right of action and your verdict under those circumstances should be no cause of action.

"The matter is relatively a simple one in one sense, although [it] seems to be somewhat difficult to state and not too easy to understand."

The jury returned a verdict for plaintiff in the sum of $590, and defendant appealed from the judgment entered thereon.

Appellant seeks reversal because of claimed error in submitting the case to the jury on either of plaintiff's theories of warranty, express or implied, or negligence, and that it was entitled to a directed verdict under the proofs. Appellant's brief says:

"Certainly the doctrine of *res ipsa loquitur* would not apply in this type of case, particularly in view of the repeated rulings by our court to that effect. It is well settled law in this country that the doctrine

of *res ipsa loquitur* does not apply to this type of case.

"For these reasons the court should not have submitted it to the jury."

The writer of the text of the negligence article in 45 C. J. says on page 1194:

"In Michigan the presumption of negligence arising under the rule of *res ipsa loquitur* has not been recognized as such in the cases; on the contrary it is frequently stated in express terms that the rule has not been adopted in this State. This statement, however, in conformity with the rule as generally applied, is apparently, and in effect, but a repudiation of the doctrine as construed to raise a presumption of negligence from the mere occurrence of the injury, rather than an actual repudiation of the principles upon which the doctrine is based. For, notwithstanding the denial of the doctrine, those principles which in other jurisdictions are embraced within, and designated as, the rule of *res ipsa loquitur* are recognized and applied by the courts of this State, although only as rules of circumstantial evidence, so as to raise a presumption or permit an inference of negligence in cases where the circumstances involved are such as would otherwise be within the application of the rule."

The Michigan rule has been recently discussed under the heading of "Negligence—Presumptive Rule of Negligence as Applied in Michigan" in 18 Michigan State Bar Journal, p. 36.

The most generally quoted statement of the Michigan rule is that made by Mr. Justice FELLOWS speaking for the court in *Burghardt* v. *Detroit United Ry.*, 206 Mich. 545 (5 A. L. R. 1333):

"This court has not adopted the rule *res ipsa loquitur;* we have uniformly held that the happening of the accident alone is not evidence of negli-

gence; and we have as uniformly held that negligence may be established by circumstantial evidence, and that where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts that at least a prima facie case is made.'' Citing *Alpern* v. *Churchill*, 53 Mich. 607, and other authorities.

This statement of the rule has been referred to in more than 15 opinions of this court since the *Burghardt Case*. It was recognized by the trial judge in his charge to the jury and is applicable to the facts presented in this record.

The authority in Michigan most nearly in point is *O'Neill* v. *James*, 138 Mich. 567 (68 L. R. A. 342, 5 Ann. Cas. 177, 110 Am. St. Rep. 321, 17 Am. Neg. Rep. 561). In that case plaintiff, a bartender, lost his eye as a. result of the explosion of a bottle of champagne cider which he had taken out of an icebox and was holding in his hand before any force was applied to it. After a discussion of plaintiff's theory of negligence and the refusal of the trial judge to direct a verdict for the defendant, the court said:

''We think, with reference to the question of negligence, the court was right in holding that, in view of the testimony upon this branch of the case, the issue should be submitted to the jury.''

But, as said in *Smolenski* v. *Libby, McNeill & Libby*, 280 Mich. 329, where there was no physical evidence of an explosion, there must be sufficient testimony to take the question of defendant's negligence out of the realm of conjecture. In the instant case there is such physical evidence.

This rule was applied in submitting the question of defendant's negligence to the jury in similar cases in *Payne* v. *Rome Coca-Cola Bottling Co.*, 10 Ga. App. 762 (73 S. E. 1087); *Atlanta Coca-Cola Bot-*

*tling Co.* v. *Danneman,* 25 Ga. App. 43 (102 S. E. 542); *Macon Coca-Cola Bottling Co.* v. *Crane,* 55 Ga. App. 573 (190 S. E. 879); *Torgesen* v. *Schultz,* 192 N. Y. 156 (84 N. E. 956, 18 L. R. A. [N. S.] 726, 127 Am. St. Rep. 894); *Winfree* v. *Coca-Cola Bottling Works,* 20 Tenn. App. 615 (103 S. W. [2d] 33); *Colyar* v. *Little Rock Bottling Works,* 114 Ark. 140 (169 S. W. 810); *Auzenne* v. *Gulf Public Service Co.* (La. App.), 181 South. 54.

Following the quotation given above from the *O'Neill Case* there is lengthy discussion as to whether or not plaintiff could recover from defendant, the bottler of the champagne cider, in the absence of privity between the parties. The court said as to this:

"It will be observed that, where no contractual relations exist, the doctrine is recognized that there must be knowledge of the dangerous character of the thing sold, before defendant can be held liable, and this doctrine is recognized in all the cases to which our attention has been called. * * *

"The plaintiff knew that champagne cider, as ordinarily manufactured and sold, was charged with a gas. As we have before stated, there is no proof from which the inference might be drawn that defendant had knowledge that the bottle was improperly charged. The proof offered on the part of plaintiff, as well as that offered on the part of defendant, is that the apparatus used by the employees was a proper one. Under the facts disclosed by the record, a verdict should have been directed in favor of defendant.

"The judgment is reversed, and a new trial ordered."

In *Hertzler* v. *Manshum,* 228 Mich. 416, involving a package of flour containing arsenate of lead, the court, speaking through Mr. Justice WIEST, said:

"The ultimate contemplated destination of wheat flour is human consumption. The manufacturer

knows this and owes a duty to the ultimate consumer of his product to guard against poison therein, and when he markets it he impliedly warrants it free from poison and the purchaser thereof, for consumption, has a right to and must, of necessity, rely upon such implied warranty, and such duty, represented as performed and relied upon as having been performed, bring the maker and consumer of such food product into privity, and for an injury arising out of a breach of such duty, impliedly warranted as performed, the sufferer may reach the one in fact inflicting the injury.

"The implied warranty, so-called, reaching from the manufacturer of food stuffs to the ultimate purchaser for immediate consumption is in the nature of a representation that the highest degree of care has been exercised and a breach of such duty inflicting personal injury is a wrong in the nature of a tort and not a mere breach of contract to be counted on in assumpsit. Except in name and to establish privity between the manufacturer and the ultimate consumer it is the same thing as negligence. Plaintiff's case, in its last analysis, is bottomed on negligence."

Mr. Justice McDonald, in *Pesavento v. E. I. D₁ Pont DeNemours & Co.*, 240 Mich. 434, discusse₁ the general rule found in *Huset v. J. I. Case Thres₁ ing Machine Co.*, 57 C. C. A. 237 (120 Fed. 865, 61 L. R. A. 303), and held that the exception that liability depends upon knowledge of the vendor that the article sold is imminently dangerous to life and limb has been followed in Michigan. He quoted from the *O'Neill Case*, but added:

"The true basis for liability, where knowledge is required, is not negligence at all, but intentional wrong. When a vendor knows that an article is imminently dangerous, and with such knowledge sells and delivers it to another without informing him of its dangerous character, he is not guilty of

negligence, but of an intentional wrong for which he is liable to any one injured by its use regardless of contractual relations. In such a case contractual relations are immaterial. The liability is apart from the contract.''

These cases illustrate the trial judge's observation that ''the law itself is not too clear'' and it must be admitted that it is difficult to reconcile even the cases in our own jurisdiction. We think some of the fog of uncertainty may be lifted by consideration of the reasoning of Mr. Justice Cardozo in *MacPherson* v. *Buick Motor Co.,* 217 N. Y. 382 (111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440, 13 N. C. C. A. 1029), and we adopt and apply the following from *MacPherson* v. *Buick Motor Co.:*

''If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. That is as far as we are required to go for the decision of this case. There must be knowledge of a danger not merely possible, but probable. It is possible to use almost anything in a way that will make it dangerous if defective. That is not enough to charge the manufacturer with a duty independent of his contract. Whether a given thing is dangerous may be sometimes a question for the court and sometimes a question for the jury. There must also be knowledge that in usual course of events the danger will be shared by others than the buyer. Such knowledge may often be inferred from the nature of the transaction. But it is possible that even knowledge of the danger and of the use will not always be enough. The proximity or remoteness of

the relation is a factor to be considered. We are dealing now with the liability of the manufacturer of the finished product, who puts it on the market to be used without inspection by his customers. If he is negligent, where danger is to be foreseen, a liability will follow.''

The injury suffered by plaintiff through the explosion of a bottle, under the circumstances related in this record and under the proofs produced, rules out the problem of privity and leaves the question of negligence as one of fact for the jury, on which it was properly instructed in the language quoted from the trial judge's charge.

The instruction by the trial judge on the question of implied warranty, if followed by the jury, required findings of fact, such as would cause defendant to be liable for negligence. For this reason, that phase of the case need not be considered.

In the consideration of this matter, we have had occasion to review many authorities *pro* and *con* on the question of liabilities arising out of the explosion of bottles. To list them would add unduly to the length of this opinion. Most of them can be found in the following annotations: 28 L. R. A. (N. S.) 949; L. R. A. 1916E, 1078; 4 A. L. R. 1094; 17 A. L. R. 672; 39 A. L. R. 992, 39 A. L. R. 1006; 56 A. L. R. 593; 63 A. L. R. 340; 88 A. L. R. 527; 105 A. L. R. 1502; 111 A. L. R. 1239.

The appendices to appellant's brief contain a helpful list of a large number of authorities on the subjects of priority, imminently dangerous articles, and *res ipsa loquitur*.

Although not cited, the doctrine of the *O'Neill Case* was emphasized in *Stolle* v. *Anheuser-Busch, Inc.*, 307 Mo. 520 (271 S. W. 497, 39 A. L. R. 1001), the court stating the policy of these cases:

''These bottled beverages, containing explosive gases, are put upon the market with the intention

that they will be transported throughout the country and sold to consumers for the profit of the manufacturer. Obviously this should be at his risk. Public policy requires that the manufacturer should assume the risks and hazards of explosion incident to the reasonable and ordinarily careful transportation and handling of these goods in the usual course of business. The rule of liability announced in *Grant* v. *Graham Chero-Cola Bottling Co.,* 176 N. C. 256, 258 (97 S. E. 27, 18 N. C. C. A. 869, 4 A. L. R. 1090), is sane, logical, reasonable, and practical, and in accord with the rule of decision in this State. It is fair to the manufacturer, and will afford the consumer of the beverage and those handling it in the ordinary course of trade reasonable protection, while the contrary rule leaves them practically without redress.''

The judgment for plaintiff is affirmed, with costs to appellee.

SHARPE, POTTER, and CHANDLER, JJ., concurred with BUSHNELL, J.

BUTZEL, C. J. I concur in the affirmance of the judgment but I think that all doubt about the theory underlying such affirmance should be removed. The introduction of the concept of contractual privity to an action based on negligence, sounding in tort, has been shown to have been anomalous and unsound. See Bohlen, ''Liability of Manufacturers to Persons other than their Immediate Vendees,'' 45 Law Quarterly Review, p. 343; Seavey, ''Mr. Justice Cardozo and the Law of Torts,'' 52 Harvard Law Review, p. 372. *Winterbottom* v. *Wright,* 10 M. & W. 109 (152 Eng. Rep. 402), the English case in which the privity doctrine arose, has been reduced to historical limbo in England itself. *McAlister* v. *Stevenson,* (1932) A. C. 562; *Grant* v. *Australian Knitting Mills, Limited,* (1936) A. C. 85. See, also, Pollock, ''The Snail

in the Bottle, and Thereafter," 49 Law Quarterly
Review, 22. Likewise, Judge Sanborn's attempt to
engraft exceptions to the privity rule, which we
followed in *Pesavento* v. *E. I. DuPont De Nemours
& Co.*, 240 Mich. 434, has further been shown by
modern scholarship to have been based on serious
misconceptions. See Bohlen, *supra;* 4 University
of Chicago Law Review, p. 461. It has been expressly
rejected by the American Law Institute. 2 Restate-
ment of Torts, p. 1074, § 395, comment "b." On the
other hand, the modern theory, which finds its source
in *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382
(111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas.
1916C, 440, 13 N. C. C. A. 1029), has been accorded
wide approval. See the cases collected in Harper,
"Law of Tort," pp. 241, 243; Bohlen, "Fifty Years
of Torts," 50 Harvard Law Review, pp. 725, 1233–
1234; Jeanblanc, "Manufacturers' Liability to Per-
sons other than their Immediate Vendees," 24 Vir-
ginia Law Review, p. 134.

Rather than attempt to perpetuate some of our
past decisions which make the question doubtful, I
think we should frankly declare that statements like
those in *O'Neill* v. *James,* 138 Mich. 567 (68 L. R. A.
342, 5 Ann. Cas. 177, 110 Am. St. Rep. 321, 17 Am.
Neg. Rep. 561), and *Pesavento* v. *E. I. DuPont De
Nemours & Co., supra,* which are inconsistent with
this theory, will not henceforth be followed in this
State. We should not, as in the *O'Neill Case,* in-
dulge in the circumlocution that a bottle of Coca-
Cola is in a class of explosive substances akin to
dynamite, nor inject the requirement of actual knowl-
edge of a defect by a manufacturer in a negligence
action based on his alleged failure to use due care.
Instead, the present decision should be predicated
on general principles of negligence now firmly es-

tablished and well summarized in 2 Restatement of Torts, p. 1073, § 395, as follows:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."

Application of this rule to bottlers of beverages has been sustained in *Georgia-Alabama Coca-Cola Bottling Co.* v. *White,* 55 Ga. App. 706 (191 S. E. 265); *Stolle* v. *Anheuser-Busch, Inc.,* 307 Mo. 520 (271 S. W. 497, 39 A. L. R. 1001); *Grant* v. *Graham Chero-Cola Bottling Co.,* 176 N. C. 256 (97 S. E. 27, 4 A. L. R. 1090, 18 N. C. C. A. 869). *Cf. Smith* v. *Peerless Glass Co., Inc.,* 259 N. Y. 292 (181 N. E. 576); *Sweeney* v. *Blue Anchor Beverage Co.,* 325 Pa. 216 (189 Atl. 331).

As to the proof of defendant's negligence, the evidence was sufficient to go to a jury without any appeal to the doctrine of *res ipsa loquitur.* The record shows that the explosion occurred only a few hours after the Coca-Cola had been delivered to the restaurant by defendant, and that the particular bottle exploded before plaintiff had actually touched it with her hand. The explosion was accompanied with a "bang" or loud noise "like a firecracker." The bottle was broken horizontally across the neck about two inches below the cap, the lower portion remaining in the refrigerator and the upper portion striking plaintiff in the face.

Plaintiff contends that the explosion was caused by a negligent overcharging of the bottle with carbonic gas. There is no claim that the bottle was defective; on the contrary, it was shown that Coca-Cola bottles are better constructed than those used for other beverages. There is no testimony whatever that after the bottle left defendant's physical control, it received any rough or unusual handling. Having excluded all other possible explanations of the accident, the circumstances irresistibly lead to the conclusion that the bottle was excessively charged. *Cf. Oleksza* v. *Nolan,* 258 Mich. 240. There was, in addition, positive evidence to support this conclusion. Plaintiff showed that bottles broken because of excessive gas content usually follow a certain general fracture pattern. The break in the bottle here involved corresponded to that pattern. The sound of the bursting bottle is further confirming evidence. Defendant's testimony was to the effect that overcharging could not normally occur if the bottling apparatus were working properly and if the pressures were being accurately verified. It was shown, however, that the pressure from the gas tanks below the bottling floor was distributed to five outlets in the same line of bottles without any governing apparatus; that this required constant regulation and supervision by an attendant with a pressure gauge and that the pressure apparatus sometimes failed to function properly. A jury question was properly presented.

Appellant calls attention to *Smolenski* v. *Libby, McNeill & Libby,* 280 Mich. 329, a case involving an alleged explosion of a can of plum pudding. Recovery was there denied because examination of the container refuted the claim that an explosion had taken place, and also there was negligence in opening the can. Nor is appellant aided by *Smith* v.

*Peerless Glass Co., Inc., supra,* where the negligence
of a bottler was asserted because of failure to inspect
bottles purchased from an independent bottle manu-
facturer.   Applying the doctrine of the *MacPherson
Case,* the court found that there was no proof that
the bottler had neglected to use due care.   It should
also be noted that in that case the explosion was
caused by defects in the bottle which was evidenced
by striations in the glass.   Here the evidence pointed
only to one direction, that a standard bottle was over-
charged.

The issue of breach of warranty need not be dis-
cussed because recovery on the negligence count has
been sustained.

NORTH and MCALLISTER, JJ., concurred with
BUTZEL, C. J.

WIEST, J. I concur in the result on the ground
that negligent charging of the bottle by defendant
created and sent out a potential danger, followed by
actual injury thereby to plaintiff.