**CANADA DRY GINGER ALE CO., Inc.,
v. JOCHUM.**

No. 270.

Municipal Court of Appeals for the
District of Columbia.

June 25, 1945.

Rehearing Denied July 9, 1945.

A. Leckie Cox, of Washington, D.C.
(Louis M. Denit and Thomas S. Jackson,
both of Washington, D.C., on the brief),
for appellant.

Leonard S. Melrod, of Washington, D.C.,
(Alvin L. Newmyer, of Washington, D.C.,
on the brief), for appellee.

Before RICHARDSON, Chief Judge,
and CAYTON and HOOD, Associate
Judges.

CAYTON, Associate Judge.

Appellee, who was plaintiff in the trial
court, was injured by the explosion of a
bottle of carbonated water manufactured
and bottled by appellant, Canada Dry Gin-
ger Ale Company, Inc. She sued the man-
ufacturer and also the retailer from whom
she had made the purchase. At the trial
the retailer was exonerated by a directed
verdict, and from the resulting judgment in
his favor no appeal was taken. The jury
awarded damages against Canada Dry Gin-
ger Ale Company, which now appeals.

This was the essence of the evidence for
plaintiff: One morning she ordered by tel-
ephone from a delicatessen store two blocks
away from her apartment house a bottle of
Canada Dry ginger ale [1] and two packages
of cigarettes. Shortly, a delivery boy ap-
peared with the articles in a paper bag.
Plaintiff received the package, paid him,
closed the door, and turned toward the
kitchen. Within a few seconds the bottle,
which she still held in the paper bag, ex-
ploded, sounding "like a firecracker" break-
ing into many pieces, shattering the bag
and injuring her face and one hand. She
immediately opened the door, and finding
the delivery boy still in the hallway sum-
moned him to assist in gathering up the
broken pieces of the bottle from the floor.
She also testified that she had not jarred
the bottle nor struck it against anything,
nor had she done anything to cause it to ex-
plode.

The delivery boy testified that the bottle
together with the cigarettes had been given
him in a paper bag, in apparent good condi-
tion, for delivery to appellee; that he
placed it in a canvas bag suspended by a
strap over his shoulder and rode the two
blocks to appellee's apartment on his bi-
cycle; that this was the only package he
carried at the time; that he handled it with
care, did not jar the bottle in the bag and
did not strike it against anything; that al-
most immediately after leaving appellee's
apartment he heard a crash and that when
she called him back he saw liquid and shat-
tered glass on the floor of the apartment.

The owner of the delicatessen store was
called as a witness for plaintiff. He testi-
fied that when deliveries were made to him
by the Canada Dry company its employees
took the bottles to the basement of the store
in wooden containers built so high that no
part of the bottles were exposed; that after
each delivery the cases were left where ap-
pellant's employees had deposited them and
were not touched; that each day approxi-

---

[1] By mistake the dealer sent Canada
Dry carbonated water; but neither party
makes an issue of that, and in fact it
seems of no consequence.

mately a day's supply was brought up from the basement in the wooden cases and the bottles were then removed from the cases and placed in the refrigerator; and that it was one of such bottles which had been delivered to plaintiff. It was upon this showing that the trial judge directed a verdict for the delicatessen operator and refused to direct a verdict for the Canada Dry company.

Appellant's only evidence was offered through the medium of a deposition of the manager of its plant at Philadelphia, from which shipments were made to Washington. He described the type of bottle used, as manufactured exclusively for the company, the care taken to inspect each empty bottle, whether new or previously used, under a strong light to discover and reject defective bottles. He also described in considerable detail the steps by which each bottle is cleansed and again tested for defects, and the mechanical as well as manual and visual means employed. He explained how the liquid is carbonated under heavy gas pressure with a regulator to control the mixture of gas and water. Also he detailed the various steps in the preparation and bottling of the beverage and the handling of the bottles before and after sealing, which he said should reveal defects in the bottles and cause, or probably cause, defective bottles to burst. He described a testing tank which puts the filled bottles under still higher pressure in order to reveal defects, and explained that this final test furnished an extra precaution against defective bottles leaving the plant. He said the company's machinery is the most up-to-date obtainable and their methods of carbonization and bottling considerably above the general standards used in the bottling trade. On cross-examination he said that bottles do not explode unless they have been improperly handled and that if and when any bottles had exploded in the plant after final inspection it was because they had been "misused in one way or another."

The principal question on this appeal is whether the trial judge was correct in refusing to take the case from the jury; which means under the circumstances of this case whether res ipsa loquitur applies.

In her complaint plaintiff made a general allegation of negligence; and in her proof, as is usual in these cases, she made no attempt to establish any specific act of omission or of commission amounting to negligence.

Had the plaintiff been the first to handle the bottle after it left the hands of the bottling company (and assuming that she was herself free of negligence) it could hardly be questioned that she would be entitled to the protection of res ipsa loquitur. This for the reason that defendant, by methods known best to it, by men and machinery under its exclusive control and with ingredients and in bottles prepared or purchased by it, was in the best position to explain the reason for the explosion. For the test of liability is whether there was negligence by the bottler while the product was under his control. Benkendorfer v. Garrett, Tex.Civ.App., 143 S.W.2d 1020; Goldman, etc., v. Sindell, 140 Md. 488, 117 A. 866. In this respect at least, there is a reasonable analogy between a bottle which explodes and one which contains a mouse, or a cigar butt, or broken glass or some other noxious substance. In either situation the consumer would contend that the danger was in the beverage or in the manner in which it was packaged and delivered for human consumption.

Recently a case involving a moldy substance in a bottle was before our United States Court of Appeals. Fisher v. Washington Coca Cola Bottling Works, 66 App. D.C. 7, 84 F.2d 261, 262, 105 A.L.R. 1034. Reversing a judgment entered on a directed verdict the court expressly held that it was a case for jury consideration under the res ipsa loquitur doctrine. There too the purchase had been made from a delicatessen store which had in turn acquired the beverage from the bottler. In its opinion, the court held that "the jury might properly have concluded from the plaintiff's case that the contents of the bottle were undisturbed until it reached the plaintiff's hands." The court employed such terms as "noxious substance," "noxious liquid," and "unsound ingredients." The court did not hold (as appellant asks us to hold here) that plaintiff was under any duty to trace and account for the handling of the bottle from the time it left the bottling works until it reached him for consumption, or to prove affirmatively that no one other than the manufacturer was responsible for the taint in the drink.

Appellant argues that unless such proof is required verdicts would always be based upon speculation and conjecture. Even if such evidence were required of consumers in cases like these we think the evidence for plaintiff met that test.

Here was a beverage highly charged with gas, manufactured in Philadelphia and subjected to the rigors of a 140-mile trip to Washington, delivered by the bottler to a store here, placed by the bottler's employees in the basement of the store. Here was affirmative evidence that the bottle had not been mishandled by the storekeeper or by his delivery boy or by plaintiff herself; but that nevertheless the bottle exploded. With that much before him the trial judge correctly refused to rule plaintiff out of court.

Then came the testimony of defendant's manager. It was impressive, for it tended to show that the best methods, finest machinery, and greatest care had been used; that neither the bottle nor its contents were defective; and that it was improbable, even impossible, for his company to have been at fault. Impressive though it was, however, it was impressive in a negative way. We hasten to say that we make no attempt to weigh his evidence either by itself or against that for plaintiff. Such was clearly the jury's function. The jury might have accepted defendant's evidence as establishing that it was free of all fault and that something of an untoward nature had happened to the bottle after defendant delivered it. On the other hand the jury was equally justified in accepting plaintiff's contention as the more likely and accurate and in drawing the inference that the explosion was chargeable to the negligence of defendant and to nothing else; inferences legitimately drawn are for the jury.[2]

There are decisions which are not in accord with what we have said.[3] But we think it is accurate to say that the trend of judicial thought is toward holding that in circumstances such as here involved, res ipsa loquitur applies and the issue becomes one of fact.[4]

In its brief appellant argues another point dealing with rulings on evidence. These we have studied and are satisfied they were not erroneous.

Affirmed.

[2] Yellow Cab Co. v. Griffith, D.C.Mun. App., 40 A.2d 340, and cases there cited.

[3] Slack v. Premier-Pabst Corporation, 40 Del. 97, 5 A.2d 516; Loebig's Guardian v. Coca Cola Bottling Co., 259 Ky. 124, 81 S.W.2d 910; Wheeler v. Laurel Bottling Works, 111 Miss. 442, 71 So. 743, L.R.A.1916E, 1074; Dail v. Taylor, 151 N.C. 284, 66 S.E. 135, 28 L.R.A., N.S., 949; Glaser v. Seitz, 35 Misc. 341, 71 N.Y.S. 942; Luciano v. Morgan, Inc. 267 App.Div. 785, 45 N.Y.S.2d 502; Seven-Up Bottling Co. v. Gretes, 182 Va. 138, 27 S.E.2d 925.

[4] Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436; Payne v. Rome Coca Cola Bottling Co., 10 Ga. App. 762, 73 S.E. 1087; Macon Coca Cola Bottling Co. v. Crane, 55 Ga.App.

573, 190 S.E. 879; Bradley v. Conway Springs Bottling Co., 154 Kan. 282, 118 P.2d 601; Lanza v. De Ridder Coca Cola Bottling Co., La.App., 3 So.2d 217; Ortego v. Nehi Bottling Works, 199 La. 599, 6 So.2d 677; Macres v. Coca Cola Bottling Co., 290 Mich. 567, 287 N.W. 922; Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001; Brunskill v. Farabi, Mo.App., 181 S.W.2d 549; MacPherson v. Canada Dry Ginger Ale Co., 129 N.J.L. 365, 29 A.2d 868; Benkendorfer v. Garrett, Tex.Civ.App., 143 S.W.2d 1020.

Note: The subject is interestingly and rather exhaustively treated in annotations in 4 A.L.R. 1094, 8 A.L.R. 500, 39 A.L.R. 1006, and 56 A.L.R. 593.