BENTON HARBOR MALLEABLE INDUSTRIES, INC., *v.*
PEARSON CONSTRUCTION COMPANY.

1. CONTRACTS—CONSTRUCTION OF BUILDING—NEGLIGENCE OF CONTRACTOR—ACCEPTANCE BY OWNER—INJURY TO THIRD PERSON—PRIVITY OF CONTRACT.

Generally, a construction contractor who is negligent in the construction of a building is not liable to third persons after the completion of the work and acceptance thereof by the owner, since there is no privity of contract between the contractor and the third person.

2. NEGLIGENCE—EVIDENCE—INSPECTION OF SAND-HANDLING EQUIPMENT.

Plaintiff owner of sandhopper which had been erected about a year before it broke loose from its moorings and injured plaintiff's employee *held,* not entitled, as subrogee, to recover from construction contractor, sums paid for workmen's compensation, where evidence does not establish negligence of defendant and does establish that plaintiff who had accepted the equipment as installed pursuant to manufacturer's directions then failed to inspect the hopper fastenings although it was equipped with a vibrator to loosen sand from the side walls, the operation of which vibrator would tend to loosen the fastening nuts and bolts.

3. CONTRACTS—NEGLIGENT PERFORMANCE—INJURY TO THIRD PERSON AFTER ACCEPTANCE OF CONSTRUCTION—FAILURE OF OWNER TO INSPECT AND REPAIR.

A construction contractor who undertook to erect a sandhopper at defendant's foundry was not liable for injuries to defendant's employee, which occurred about a year after the hopper had been erected and accepted by plaintiff, where defendant had no duty to perform after the acceptance, it was not es-

REFERENCES FOR POINTS IN HEADNOTES
[1] 9 Am Jur, Building and Construction Contracts §§ 26–29; 12 Am Jur, Contracts § 273.

tablished defendant was negligent in the construction and plaintiff failed to inspect and repair during period of its exclusive control.

Appeal from Berrien; Robinson (Thomas N.), J. Submitted April 3, 1957. (Docket No. 22, Calendar No. 46,713.) Decided June 3, 1957.

Case by Benton Harbor Malleable Industries, Inc., a Michigan corporation, against Pearson Construction Company, a Michigan corporation, for reimbursement of sums paid by way of workmen's compensation to employee injured because of alleged faulty installation of equipment. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Robert B. Locke* and *Roscoe G. Goembel*, for plaintiff.

*Troff, Lilly & Bonow*, for defendant.

KELLY, J. Plaintiff is a Michigan corporation operating a foundry in Benton Harbor, Michigan, and in March, 1947, purchased sand-handling machinery from a manufacturer of such equiment located in Cleveland, Ohio.

The defendant is a Michigan corporation, having its principal place of business in Benton Harbor, Michigan, and is engaged in the business of installing the type of machinery and equipment plaintiff purchased from the Cleveland manufacturer.

Plaintiff contracted with defendant to install the machinery in its foundry and employed the Cleveland manufacturer's superintendent (Mr. Kendall) to supervise defendant's installation. After 7 or 8 months spent in installation and after 2 or 3 weeks trial operation, plaintiff accepted defendant's installation.

After operating the machinery for approximately 1 year, a sandhopper, used in funneling sand, broke loose from its moorings and injured plaintiff's employee (Mr. Fennel), and plaintiff paid said employee for the injury sustained, pursuant to the provisions of the workmen's compensation act.

Plaintiff commenced this action under CL 1948, § 413.15 (Stat Ann 1950 Rev § 17.189), the subrogation section (pt 3, § 15) of the workmen's compensation act, to recover from defendant the $3,500 paid to its injured employee, Fennel, alleging that his injury was caused by the negligent acts of defendant.

At the conclusion of plaintiff's proofs the court granted defendant's motion for a directed verdict, and plaintiff appeals.

The sandhopper was funnel-shaped, about 14 to 15 feet in height, and approximately 4 feet in diameter. Thirty or 40 of these sandhoppers were installed by defendant and operated by plaintiff from one end of the foundry to the other, carrying sand to boxes positioned above the heads of the working molders.

A flange extended out at the top of the hopper with 3 11/16th-inch holes on each of the 4 sides. The specifications and blue prints prepared by plaintiff's Cleveland manufacturer called for the insertion of 1/2-inch hexagonal bolts to fasten the hopper to its moorings, and these bolts were furnished by the Cleveland manufacturer.

Defendant's steel superintendent (Hartzell), who was not a construction engineer, challenged the adequacy of the manner of fastening the hopper to its moorings because a 1/2-inch hexagonal bolt was being used in an 11/16th hole without the insertion of washers. After said challenge plaintiff's supervisor (Kendall) telephoned the Cleveland manufacturer and then informed Hartzell that he should pro-

ceed to construct as the plans and specifications called for, and insert the 1/2-inch bolt in the 11/16th-inch hole without washers.

After the hopper had fallen and injured the employee, defendant's superintendent, Hartzell, made an inspection of the premises, and he testified: "You could see at that time that the bolts had pulled through the plates or the plates had pulled through the bolts;" and that "based on my experience as a steel suprintendent, I do not think that if washers had been placed under the plates under the head of the 1/2-inch bolts and the flange through which there was a hole that the hopper would have fallen."

Plaintiff does not challenge Hartzell's testimony, but endeavors to meet same by stating:

"Mr. Hartzell observed that there are 11/16th-inch holes in the hopper which were to be anchored by 1/2-inch bolts and questioned the correctness of such procedure. He was, therefore, negligent in not compensating for the condition by the use of washers."

Plaintiff further endeavors to support its conclusion by the following from 123 ALR 1203:

"The decided weight of authority supports the proposition that where an independent contractor has done work on an instrumentality, and by his work makes the instrumentality imminently dangerous to those he knew would use it, he remains liable, even after the completion of his work and its acceptance by the contractee, to third persons injured as the result of his negligence, if the contractor knew, or in view of the peculiar circumstances of the case should have known, the dangerous condition by him created, and the contractee had no knowledge of the dangerous condition or defects, which was so concealed that reasonable inspection by the contractee would not have discovered it."

Plaintiff was in complete and sole charge of the installed machinery during the entire period of 1 year intervening between the date of installation and the date of injury, and does not claim or infer that defendant had any duty to perform during that period.

Plaintiff's action against defendant is based on its claim that defendant's negligent failure to insert 3 bolts on one side caused the hopper to fall. The fact that plaintiff failed to introduce direct proof sustaining such an allegation is set forth in plaintiff's statement that "there are a number of circumstances which we believe lead to the conclusion that bolts were entirely missing from one side of the sandhopper and had never been inserted therein."

There is no evidence in this record that the bolts were not inserted by defendant at the time of installation. Plaintiff's supervisor states that he did not know whether they were inserted or not, and defendant's superintendent positively testifies that they were inserted.

Plaintiff's statement that there were "a number of circumstances" which lead to the conclusion that bolts were missing, is based solely upon their observation of the hopper after it fell that "the holes on one side of the flanges had collected dust and dirt. The hopper was dirty around that one side. The other 3 sides were clean around the bolt holes."

Plaintiff does not negate the conclusion that the bolts were inserted at the time of installation and were jarred loose and fell out sometime during plaintiff's 12-month operation. The record establishes that a catwalk was constructed in such a way that it would have been a very easy and simple operation for plaintiff to have made periodic inspections to determine whether the bolts were in place and "when a person would get up on this so-called cat-walk all

of these bolts we have been talking about would be visible to such a person."

Vibrators, worked by air and having a little hammer that hit the side of the hopper to loosen the sand, were installed on some of the hoppers and on those that did not have vibrators the sand was loosened by a sledge hammer pounded against the sides of the hopper.

The fact that plaintiff failed to make an inspection during the 12-month period of operation of this equipment, and, also, the fact that plaintiff was also aware that vibrators would tend to loosen bolts, is disclosed by the testimony of plaintiff's foundry superintendent, who said:

"After this accident occurred, I went through the line of hoppers and checked them. We checked them from time to time after that. I don't believe that they had ever been checked prior to this accident. This particular hopper that fell was equipped with a vibrator. This particular line of hoppers had been in operation merely a year. Actually it was just a few days short of a year and up until this happened these had never been inspected to my knowledge as a part of the maintenance program. I was familiar with the manner in which these were installed being bolted to a superstructure and I was familiar with the fact that these hoppers were equipped with vibrators and I was familiar with the fact that vibration has a tendency to loosen nuts and bolts."

The court in directing a verdict stated:

"That the proximate cause of this injury to Mr. Fennel, without doubt, was the failure and negligence of the company during the year's period while this equipment was in operation to inspect, repair and maintain it in proper manner. I believe that is what caused the trouble."

It is interesting to note that in plaintiff's brief and argument there is listed as question 5, the following

"Was the failure of plaintiff and appellant to inspect, repair and maintain this equipment as a matter of law the proximate cause of the injury to plaintiff's employee?"

The only further reference in plaintiff's brief to this question is the citation of *Utley* v. *Taylor & Gaskin, Inc.*, 305 Mich 561, 570, and the quotation therefrom that:

"Plaintiff's reservation in the subcontractor, of the right to inspect and to reject materials, did not give him such degree of control as to change defendant's status as an independent contractor."

An examination of the *Utley Case* discloses that the defendant was a subcontractor for steel construction work in a building and we held in that case that he was an independent contractor as a matter of law because of the plain and unambiguous subcontract, which simply called upon him to furnish and erect structural steel according to plans and specifications and as per subcontract, notwithstanding reservation in the general contractor of the right to inspect and reject materials and a stipulation that union labor should be used.

The general rule as to the liability of a contractor who installs machinery according to specifications and blue prints furnished by the manufacturer and under the direction of a supervisor employed by the contractee, is set forth in 13 ALR2d 201, 202, as follows:

"Most courts, in passing upon the question of building or construction contractor's liability for negligence resulting in injury or damage to third persons after the completion of the work and acceptance thereof by the owner, start with the assumption of what they consider to be the general rule that the contractor is not liable for such injuries to third person, on the theory that no privity of contract exists

between the contractor and such third person, and that no duty is owed by the contractor in performing the contract to one other than the contractee. * * *

"The rule that a construction or building contractor is not liable for injuries or damage to a third person with whom he is not in contractual relation, resulting from the negligent performance of his duties under his contract with the contractee when the injury or damage is sustained after the acceptance of the completed work by the owner or contractee, may be said to be supported by the following cases, in most of which recovery was denied, and in some of which recovery was allowed under an application of an exception to the rule." (Citing cases.)

Appellee states that after a very thorough examination of the Michigan authorities on the question of a contractor's liability to third parties it is its opinion that there is no case directly in point, but cites *Salliotte* v. *King Bridge Co.* (CCA), 122 F 378 (65 LRA 620).[*]  This case involved alleged negligent acts of the contractor in dredging, to the injury of plaintiff's property.  The cause of action arose in Michigan, and in this case it was held:

"A contractor cannot be held liable to a stranger for an injury resulting from the defective construction of a bridge, when the injury did not occur until after the bridge had been completed and accepted by the owners, and the contractor had parted with the possession and title." (Syllabus.)

Appellee also calls attention to what it states is a somewhat analogous situation in *Huey* v. *Barton*, 328 Mich 584, 588, where we held that:

"A lessor, who has no control over the demised premises, is not liable to persons on the land with the

_____
* Certiorari denied, 191 US 569 (24 S Ct 841, 48 L ed 306).—RE-PORTER.

consent of the lessee for personal injuries arising from a total breach of the lessor's repair covenant."

Appellant admits that the general rule is that an independent contractor is not liable for injuries to third parties, where he has completed the work and turned it over to contractee, but claims there is an exception to this rule where, as in this case, defendant's work was so negligently performed as to be imminently dangerous to third parties, and cites in support of this contention 123 ALR 1199:

"A qualification of the general rule which is frequently given effect is that which proceeds upon the theory that an independent contractor is liable where the product of his completed work is abnormally dangerous, and where this was known or ought to have been known by him."

In considering plaintiff's failure to properly inspect and maintain the hopper, we cite the following from 13 ALR2d 207, 208:

"It is the intervening negligence of the proprietor that is the proximate cause of the injury resulting from the contractor's work, after acceptance thereof by the owner, and not the original negligence of the contractor. By occupying and resuming possession of the work the owner deprives the contractor of all opportunity to rectify his wrong. Before accepting the work as being in full compliance with the terms of the contract, he is presumed to have made a reasonably careful inspection thereof, and to know of its defects, and if he takes it in the defective condition, he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author. When he accepts work that is in a dangerous condition, the immediate duty devolves upon him to make it safe, and if he fails to perform this duty, and a third person is injured, it is his negligence that is the proximate cause of the injury. His liability may be incurred either from his substitution for the

contractor or from his neglect to repair. *Casey* v. *Wrought Iron Bridge Co.*, 114 Mo App 47 (89 SW 330)."

The court in *Wood* v. *Sloan*, 20 NM 127 (148 P 507, LRA1915E, 766), held that a contractor employed to construct or install given work could not be held liable to third persons after he turned the work over to his employer because, when the work is completed to the satisfaction of the owner and the employer takes over the same and adopts it to his own use, he assumes the duty to take care of that which has been accepted and guard against dangerous defects.

In a Connecticut case, *Howard* v. *Redden*, 93 Conn 604 (107 A 509, 7 ALR 198), the court dealt with a suit instituted against a carpenter-contractor who had constructed an overhanging cornice weighing 800 pounds on a 4-story building. Considerable time after the completion of the work and after it was turned over to the person for whom the contractor built it, a third person was killed by the falling of the cornice. In this case the court pointed out that the contractor was not an insurer of the everlastingness of the materials and the owner of the premises was under an obligation to make such repairs as would preserve the structure from natural causes, and stated that (p 611): "The original negligent construction did not cause any harm, until the owner's negligence with respect to inspection and repair occurred, and the defendant Gilbey (contractor) confessedly was in no way bound to anticipate or assume responsibility for this."

The New Jersey supreme court in *Miller* v. *Davis & Averill, Inc.*, 137 NJL 671 (61 A2d 253), dealt with an accident which happened 2 years after an independent contractor had repaired a crane-operating mechanism and after the job had been accepted by

the owner. In this case the contractor had no further duty to service after repairing, and the court held that the evidence did not provide a basis for the conclusion that there was a causal connection between the alleged negligence of the contractor and the accident 2 years later, and that such conclusion would be essentially speculative in the face of the evidence that wear and tear would produce the condition as a result of which the accident occurred.

The trial court did not err in directing a verdict. There is a total absence of proof, or any inference from proof, that would justify a verdict that defendant failed to insert the 3 bolts in the hopper. In fact, the only proof is to the contrary—that defendant did insert the bolts. Plaintiff's proof is confined to the fact that the 3 bolts were not in the hopper at the time it fell. This does not, by fact or inference, submit sufficient proof to allow the jury to guess that the bolts were not in the hopper at the time of installation, nor at the time it was inspected and accepted by plaintiff. Plaintiff's negligence in failing to inspect the hopper during the 12-month period of operation justifies the trial court's conclusion that the employee's injury was caused by "the failure and negligence of the company during the year's period while this equipment was in operation to inspect, repair and maintain it in proper manner." Plaintiff cannot hold defendant responsible for fastening the hopper to its moorings with bolts furnished by plaintiff and which were inserted under plaintiff's orders and instructions.

Judgment affirmed. Costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, CARR, and BLACK, JJ., concurred.