STATE OF MARYLAND for the use and benefit of Elsie C. WOODZELL, Barbara Ann Woodzell, and Alice Jane Edwards, Elsie C. Woodzell, Executor of the Last Will and Testament of Peyton C. Woodzell, Deceased, Plaintiffs,

v.

GARZELL PLASTICS INDUSTRIES, Inc., a Michigan corporation, Arena Craft Corp., a Michigan corporation, and Dan Arena, individually and d/b/a Dan Arena Company, Defendants.

No. 16469.

United States District Court
E. D. Michigan, S. D.

June 28, 1957.

Cary & BeGole, Detroit, Mich., for plaintiffs.

John F. Noonan, R. E. Rutt, Foster, Meadows & Ballard, Detroit, Mich., for defendants.

LEDERLE, Chief Judge.

This is an action to recover for the wrongful death of Peyton C. Woodzell, who was drowned when the boat which he had purchased from agents of defendants, Arena and Arena Craft Corp., broke apart in the Potomac River. The complaint alleges that the hull of this boat was negligently made by defendant Garzell Plastics Industries, Inc., and that it was the hull which broke causing the boat to sink. Garzell Plastics Industries, Inc. (hereinafter called Garzell) has moved to dismiss the action as to it on the ground that, under applicable Maryland law, it could not be liable to the plaintiffs in the circumstances presented.

This motion raises the familiar and troublesome question of a manufacturer's duty of care to a remote vendee. Since the Maryland decisions on the problem are not entirely clear, a brief review of the principles involved seems in order.

It would seem that on the ordinary principles of negligence that a manufacturer would have a duty of care to all those who may come into contact with his product if he must know that the article will be dangerous if not carefully made. However, in Winterbottom v. Wright, 152 Eng.Reprint 402 (1842), it was held that one who had contracted with the Postmaster General to supply mail coaches and to keep them in a fit, proper and safe condition, could not be held liable to one who was injured when one of these coaches broke down. Since the plaintiff was attempting to rely on the contract between the defendant and the Postmaster General, the court's objection that plaintiff was a stranger to

that contract had some merit. The court stated that the only safe rule in such cases was to confine the right to recover to those who were parties to the contract.

Disregarding the actual facts of this case and the nature of the holding, many courts quickly applied it as authority for the proposition that manufacturers could not be held liable for negligence in the making of their goods except to their immediate vendees. This rule developed despite the fact that it had never before been the law that there must be a contract involved before there can be liability for negligence.

Almost as soon as this so-called general rule of nonliability was recognized, its obvious injustice led to the creation of "exceptions."

The most important of these exceptions can be traced to Thomas v. Winchester, 6 N.Y. 397, in which a manufacturing druggist was held liable for damages resulting from his negligence in putting the label of a harmless medicine on a bottle of deadly poison. It was said that the general rule of nonliability did not apply to products which were inherently dangerous to human life. This exception to the so-called general rule was later extended and applied to a wide variety of products, such as poisons, drugs, guns, explosives, and subsequently to articles of foodstuffs.

The final extension of this "dangerous instrumentality exception" came in the celebrated decision of Justice Cardozo in MacPherson v. Buick Motor Company, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696. In that case, the court held that an automobile manufacturer was liable for negligence to a remote vendee, who was injured when a wheel of the car in which he was riding broke down causing a collision. The evidence indicated that even though the wheel was not made by the defendant manufacturer, it was defective when made and the defect in it could have been discovered by the automobile manufacturer on due inspection. Justice Cardozo did not attempt to eliminate the use of the phrase

"inherently dangerous," rather, he vastly widened the scope of that phrase by holding that it applied to any article which may be foreseen to result in injury to anyone properly using it if the article has been defectively made.

In Carter v. Yardley & Co., 1946, 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559, plaintiff was injured by the application of some perfume which was manufactured by the defendant and purchased from an independent retailer. The court, in reversing a judgment for the defendant, held that there was sufficient evidence of negligence and causation and that a manufacturer could be held liable in those circumstances. The court in so doing noted that the doctrine of the MacPherson case is now generally accepted.

"Its acceptance has brought all dangerous things into the same class as the 'inherently dangerous' things to which the principle already stated has always been applied. The MacPherson case caused the exception to swallow the asserted general rule of nonliability, leaving nothing upon which that rule could operate. Wherever that case is accepted, that rule in truth is abolished, and ceases to be part of the law. * * * The time has come for us to recognize that that asserted general rule no longer exists. In principle it was unsound. It tended to produce unjust results. It has been abandoned by the great weight of authority elsewhere. We now abandon it in this commonwealth." 64 N.E.2d 693, at page 700, 164 A.L.R. 559, at page 568.

Winterbottom v. Wright has been unable to withstand the double body blows of MacPherson v. Buick Motor Co. and Carter v. Yardley. In the annotation to Carter v. Yardley, 164 A.L.R. 570, at page 595, the annotater notes that the retention of the general rule (of nonliability) and exceptions have enlarged and not diminished the problems of the courts and the simplest way out of the difficulty is the route taken in Carter

v. Yardley to abandon the general rule and go back to the ordinary principles of tort without regard to notions about "privity of contract."

The American Law Institute Restatement of the Law of Torts makes a clear statement which is on its way towards general acceptance as the rule of manufacturer's liability:

> "A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured." Restatement Torts, Sec. 395.

This section has been expressly cited and approved in numerous Federal and state court decisions. In many recent decisions of U. S. Courts of Appeal, the extent of the duty of the manufacturer has not even been discussed, it being assumed that the manufacturer did have a duty of care extending beyond the persons with whom he had contractual relations. Smith v. General Motors Corp., 5 Cir., 227 F.2d 210; Panther Oil & Grease Corp. v. Segerstrom, 9 Cir., 1955, 224 F.2d 216; Wieland v. C. A. Swanson & Sons, 2 Cir., 1955, 223 F.2d 26. The Sixth Circuit has also given recognition to the modern rule. In O'Donnell v. Geneva Metal Wheel Co., 6 Cir., 1951, 183 F.2d 733, 738, it was said:

> "Judge Cardozo laid down the fundamental rule that if the nature of a finished product placed on the market by a manufacturer to be used without inspection by his customers is such that it is reasonably certain to place life and limb in peril if the product is negligently made, it is then a thing of danger; its nature

gives warning of the consequences to be expected; and, if to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser and used without new tests, then irrespective of contract, the manufacturer of the dangerous instrumentality is under a duty to make it carefully; and this principle is not limited to poisons, explosives, and things of like nature which, in their normal operation, are implements of destruction. The rule thus announced is followed by this court and the majority of federal and state courts."

In the MacPherson case, the question of the liability of a manufacturer of parts, which were to be later assembled into a completed product, was expressly left open. This opening did not last long. In Smith v. Peerless Glass, 1932, 259 N.Y. 292, 181 N.E. 576, one who had been injured by the explosion of a soda pop bottle sued both the manufacturer of the bottle and the bottler who had purchased the bottle and filled it with soda pop. The court noted that the bottle maker was in the same position as the wheel maker in the MacPherson case. It then stated that the law as to such manufacturers was no longer in doubt and affirmed the judgment against the bottle maker and reversed the judgment against the bottler.

The Maryland cases cited by Garzell in support of its motion to dismiss do not show that Maryland will not accept the modern rule of manufacturer's liability. State of Maryland to Use of Bond v. Consolidated Gas, Electric Light & Power Co., 1924, 146 Md. 390, 126 A. 105, 42 A.L.R. 1237 did not involve the liability of a manufacturer at all but was an action against a party who had sold a defective gas heater to the father of the deceased. The complaint did not allege that the defendant had manufactured the heater, knew that it was defective, or that the heater was an imminently dangerous object. The action

was based on warranty, not negligence and so the decision that it could not be maintained in the absence of privity was technically correct and in no way inconsistent with the MacPherson doctrine. Rounds v. Phillips, 1934, 166 Md. 151, 170 A. 532, 536, was not concerned with either manufacturer's liability or warranty. It was an action against the parents of a boy who had been furnished an auto even though the parents knew that he was a habitually negligent driver. In overruling the demurrer to the complaint, the court stated, "We have definitely held that an automobile is not an inherently dangerous instrumentality but is an instrument which is potentially dangerous." In Otis Elevator Co. v. Embert, 1951, 198 Md. 585, 84 A.2d 876, the Maryland court did not reject the doctrine of MacPherson but merely held that there had been no proof of negligence.

The Baltimore City Court, which is a court of first instance, has specifically applied the MacPherson doctrine in a case with facts substantially the same as those in the MacPherson case. After reviewing the Maryland authorities, Chief Judge Dennis stated:

"It is to be gathered * * * that when confronted with a case for decision which presents the same controlling features as were present in 217 N.Y. 382 [111 N.E. 1050], which the case at bar as made out in the declaration manifestly does, that the Maryland Court of Appeals will follow the precedent, so luminously and convincingly set by Justice Cardozo." Kemich v. Legum (November 17, 1933)

Upon all the foregoing it cannot be imagined that the Maryland Court of Appeals would deny the liability of Garzell Plastics in the circumstances here presented. Winterbottom v. Wright belongs to the Nineteenth Century—the Twentieth Century is guided by MacPherson v. Buick Motor Co. The motion to dismiss must be overruled