Eleonora SITTA, Administratrix of the Estate of Pasquale Vitucci, Deceased, Appellant,

v.

**AMERICAN STEEL AND WIRE DIVISION OF UNITED STATES STEEL CORPORATION, Appellee.**

No. 13207.

United States Court of Appeals Sixth Circuit.

April 10, 1958.

Jack R. Sullivan, Konrad D. Kohl, Detroit, Mich. (Davidson, Kaess, Gotshall & Kelly, Detroit, Mich., on the brief), for appellant.

William G. Butler, George E. Bushnell, Jr., Detroit, Mich. (Miller, Canfield, Paddock & Stone, Detroit, Mich., O. P. Moon, Cleveland, Ohio, on the brief), for appellee.

Before ALLEN and MILLER, Circuit Judges, and BOYD, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellant, as Administratrix of the Estate of Pasquale Vitucci, deceased, brought this action in the District Court under the Michigan Death Act, Comp. Laws 1948, § 691.581 et seq. to recover damages by reason of the death of the decedent. The decedent was killed on September 19, 1955, when a wire rope or cable, which was manufactured and sold by the defendant * and was being used in the operation of an excavating machine, broke, with the result that a large metal bucket which was about one-quarter filled with dirt fell upon him, killing him instantly. The complaint alleged that defective construction of the rope through negligence on the part of the defendant was the cause of the accident. Jurisdiction was claimed by reason of diversity of citizenship and the amount in controversy. At the conclusion of plaintiff's evidence, the District Judge directed a verdict in favor of the defendant, from which ruling this appeal was taken.

Plaintiff's evidence showed the following. Vitucci was an employee of the Glime Construction Company which was the owner and operator of a piece of earth-moving construction equipment

* The parties will be herein referred to as they were in the trial court.

known as a Lima Backhoe which was used for excavating. The Construction Company was a sub-contractor employed on a residential housing development near Utica, Michigan. Vitucci was employed as a labor foreman by the Construction Company and at the time of the accident he and his work crew were engaged in installation of a sewer line. The Backhoe was being used in this work. The Backhoe had been purchased about a month before the accident by the Construction Company and had operated prior to the accident in an excellent manner.

The wire rope or cable being used on the Backhoe was a ⅝-inch cable purchased by the Construction Company from Contractors Equipment Company shortly before the accident. The cable was installed on the Backhoe by its operator, Orville Cooper, about a week before the accident and had been in operation from 60 to 70 hours.

At the time of the accident the Backhoe was facing southwardly and Cooper was swinging the raised boom and bucket in a clockwise movement from the south, westwardly to the north, with the machine itself pivoting on its turntable. Vitucci was standing to the west of the Backhoe discussing the job with his employer, James Glime, and was facing in a southerly direction. Glime was standing about three feet south of Vitucci and facing in a northerly direction. The bucket passed over the head of Glime, the cable broke without warning and the bucket fell, striking Vitucci on the head.

Under normal operations, such a cable as was involved in this case usually lasts for a period of from six to eight weeks. Cooper testified that he inspected the cable, which was a new one, at the time he installed it on the machine, but did not find anything wrong with it. It was covered with a heavy heat-resisting lubricant like a tar. His inspection was mainly to determine whether there were any broken strands and if the rope was the right size in diameter. He testified that he did not check it with reference to where the core was in the rope, but that

he would not have installed the rope if the core had been on the outside. The cable had also been inspected two or three hours before the accident by Cooper, but this did not include an inspection of the cable area where the break occurred because that area was not a point of wear. After the accident the broken cable was taken to the office of the Construction Company. Approximately three weeks later, two or three pieces of it were delivered to Dr. Howell at Wayne State University, Detroit, Michigan.

Pieces of the broken cable were introduced in evidence and Dr. Howell testified at length about them. His qualifications for giving such testimony are summarized as follows. He was forty-four years of age, a Doctor of Mechanical Engineering, having received a Bachelor's degree in Mechanical Engineering, Wayne University, a Master's degree in Mechanical Engineering, University of Michigan, and a Doctor level professional degree at the University of Michigan. He started working in an engineering office at the age of 16, had worked with numerous companies in various capacities including Assistant Chief Engineer and Chief Engineer. Over a period of time he was in charge of maintenance and new construction at the Pennsylvania Salt Mining Co. where cables were used extensively. He later formed his own firm for engineering, designing and consultation. He was a Professor of Mechanical Engineering at Wayne University where he had taught for nine years. He had had occasion to come in contact with cables and wire ropes, both in the classroom and in the field. He had designed hoisting or pulling devices. He had made some study of the construction of wire rope and the load carrying capacities and characteristics, using well known handbooks in that field.

Dr. Howell testified that the cable was a pre-formed wire rope constructed of improved plow steel with an independent wire rope center, with six strands wound around the center or core, each strand containing nineteen wires plus six addi-

tional small filler wires. In his visual examination of the cable, he discovered that the core wire was not within the inside or in the center of the cable throughout its entire length but rather was on the outside of the cable for a considerable portion of its length. He had pieces cut from various sections of the cable, conducted various tests, including the use of a tensile test machine to determine how much load would be required to break them, and a microscopic examination of the ends of the cable to determine the type of break which occurred. Photographs were taken and introduced in evidence. He testified that the cable broke under a tension. In his opinion, the cable broke at a point where there would be less wear than on the remaining portion of the cable. In such other places there would be wear by reason of going around the bend of a pulley or sheave. He further testified that the core of the cable was on the outside of the cable before the accident, although it was normal for the core to be in the center of the cable, that the cable was weaker with the core on the outside with reference to its tensile strength than if the core was on the inside in its normal position, and that the defect in the cable, namely, the position of the core on the outside of the cable, occurred at the point of manufacture of the cable. Dr. Howell gave his reasons for such conclusions. He frankly admitted that he had never participated in the manufacture of wire rope, that he had never seen wire rope manufactured, that he did not know what kind of machine was used by the defendant to manufacture the wire rope, and that he did not claim to be a wire rope expert. He conceded that his testimony was an "educated guess." It was undisputed that the rope had lain unattended for approximately three weeks at the Construction Company's office before the pieces of it were delivered to Dr. Howell and that his analysis of it was made after the break, not at the time of its manufacture and sale. In answer to the question, "Why did the rope break?", he stated, "In my opinion, the rope broke because it was not capable of carrying the load that was placed on it at that time." He did not know why the rope lasted for 60 to 70 hours before it broke. He did not claim that his theory as to why the accident occurred was the only possible cause of the accident but stated that the accident could have been brought about probably by any one of many causes, or a combination of causes.

 On defendant's motion for a directed verdict the evidence will be considered in the light most favorable to the plaintiff. Pomeroy v. Dykema, 256 Mich. 100, 239 N.W. 342. Since jurisdiction is based upon diversity of citizenship, we are governed by the law of Michigan. O'Donnell v. Geneva Metal Wheel Co., 6 Cir., 190 F.2d 59.

 There is some discussion in the briefs about the application of the res ipsa loquitur rule in determining whether the evidence was sufficient to take the case to the jury. The rule is not applicable to the case for two reasons. It has not been adopted by the Supreme Court of Michigan. Burghardt v. Detroit United Railway, 206 Mich. 545, 546, 173 N.E. 360, 5 A.L.R. 1333; Hazen v. Rockefeller, 303 Mich. 536, 545, 6 N.W. 2d 770. In jurisdictions where it is recognized, the instrumentality causing the injury must be at the time of injury under the management or control of the defendant or his agent, in order for the rule to apply. City of Maryville v. Farmer, 6 Cir., 244 F.2d 456, 458; Louisville Taxicab & Transfer Co., Inc. v. Jackson, Ky., 251 S.W.2d 874. In the present case the wire rope had passed from the control of the defendant.

 Other principles of law well settled in Michigan are applicable to the case. It has often been held that the happening of the accident alone is not evidence of negligence. Daigneau v. Young, 349 Mich. 632, 85 N.W.2d 88; Taylor v. Butcher, 349 Mich. 581, 84 N. W.2d 779. But the Supreme Court of Michigan has also consistently held that negligence may be proved by circumstantial evidence, and the fact that an accident happened may be considered along with proof of the other circumstances to

determine whether negligence existed. Burghardt v. Detroit United Railway, supra, 206 Mich. 545, 546–547, 173 N.W. 360, 5 A.L.R. 1333; In re Estate of Miller, 300 Mich. 703, 710, 2 N.W.2d 888. Even though the Court may not have departed from its long established rule that the res ipsa loquitur rule is not applicable in Michigan, it has, nevertheless, recognized and applied a rule of broader application, not restricted to cases where the instrumentality is under the exclusive control of the defendant, namely, that where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts, at least a prima facia case is made. Indiana Lumbermens Mutual Ins. Co. v. Matthew Stores, Inc., 349 Mich. 441, 84 N.W.2d 755; Heppenstall Steel Co. v. Wabash Railway Co., 242 Mich. 464, 219 N.W. 717; Pattinson v. Coca-Cola Bottling Co., 333 Mich. 253, 52 N.W.2d 688. See: Ford Motor Co. v. Bradley Transp. Co., 6 Cir., 174 F.2d 192, 196. Under this rule it is not necessary that the plaintiff prove both (1) that the circumstances are consistent with his theory of negligence, and (2) that such circumstances preclude any other rational conclusion. Whether the inference of negligence logically resulting from the proven circumstances is the correct inference, or whether it is sufficiently rebutted by the defendant's evidence, is a question for the jury. Maki v. Isle Royale Copper Co., 180 Mich. 624, 630–631, 147 N.W. 533; Schoepper v. Hancock Chemical Co., 113 Mich. 582, 586, 589, 71 N.W. 1081.

 In our opinion, it was a reasonable inference from the proven facts and testimony in this case, although not necessarily the only one or the correct one, that the rope broke because of a defect in its manufacture. There was more than the mere breaking of the rope and the resulting accident. The physical condition of the rope after the accident was in evidence. There was, in addition, the opinion evidence of plaintiff's expert witness. Peoples Gas Co. of Ky., Inc. v.

Fitzgerald, 6 Cir., 188 F.2d 198, 201. The technical training of this witness was sufficient to qualify him to give his opinion to the jury. John J. Fulton Co. v. Federal Trade Commission, 9 Cir., 130 F.2d 85, 86, certiorari denied 317 U.S. 679, 63 S.Ct. 158, 87 L.Ed. 544; Bratt v. Western Air Lines, Inc., 10 Cir., 155 F.2d 850, 853–854, 166 A.L.R. 1061. The fact that he had never participated in the manufacture of wire rope and that he had never seen wire rope manufactured was a matter of credibility for the jury to consider. United States v. One Device, etc., 10 Cir., 160 F.2d 194, 199; Koch v. Federal Trade Commission, 6 Cir., 206 F.2d 311, 315; Charles of the Ritz Distributors Corp. v. Federal Trade Corp., 2 Cir., 143 F.2d 676, 678–679. Nor did the fact that he admitted that he could not say with certainty that the rope broke because of its negligent manufacture by the defendant destroy the probability that the break did result from such a cause. Harrison v. Lorenz, 303 Mich. 382, 391–392, 6 N.W.2d 554. As pointed out above, it is not necessary that circumstantial evidence be conclusive in order to take a case to the jury. Schoepper v. Hancock Chemical Co., supra; Ebers v. General Chemical Co., 310 Mich. 261, 17 N.W.2d 176, 279. The evidence being sufficient to take the case out of the realm of conjecture and bring it within the field of legitimate inferences with respect to the question of defendant's negligence, the case should have gone to the jury on this issue. Maki v. Isle Royale Copper Co., supra, 180 Mich. 624, 630, 147 N.W. 533; Baltimore & O. R. Co. v. O'Neill, 6 Cir., 211 F.2d 190, reversed 348 U.S. 956, 75 S.Ct. 447, 99 L.Ed. 747; Kaminski v. Grand Trunk W. R. Co., 347 Mich. 417, 420–421, 79 N.W. 2d 899. Whether the facts and evidence in a particular case are sufficient to take the case out of the realm of conjecture is often a close question. In Lovas v. General Motors Corp., 6 Cir., 212 F.2d 805, we were of the opinion they were not. In the present case the evidence is much stronger resulting in this different conclusion.

Although the evidence was sufficient to make a prima facie case of negligence on the part of the defendant, the case involves the additional question whether such negligence, if found to exist, was actionable on the part of a third party, who was not the purchaser of the rope and with whom there was no privity on the part of the defendant.

It was the early general rule, established by both British and American cases, that a manufacturer was not liable for negligence to remote vendees or other third persons with whom he had had no contractual relations. But this rule has been departed from by more recent cases. The modern doctrine of liability in such cases was established by the case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, 1053, L.R.A.1916F, 696. As stated in that case, "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. * * * There must be knowledge of a danger, not merely possible, but probable. * * * Whether a given thing is dangerous may be sometimes a question for the court and sometimes a question for the jury. * * * The proximity or remoteness of the relation is a factor to be considered. * * * If he is negligent, where danger is to be foreseen, a liability will follow." For a discussion of this subject, see Annotation, 164 A.L.R. 569.

This Court has applied the rule in several cases, including Goullon v. Ford Motor Co., 6 Cir., 44 F.2d 310; Borg-Warner Corp. (Norge Division) v. Heine, 6 Cir., 128 F.2d 657; O'Donnell v. Geneva Metal Wheel Co., 6 Cir., 183 F.2d 733, 190 F.2d 59, certiorari denied 341 U.S. 903, 71 S.Ct. 612, 95 L.Ed. 1342. It has also been adopted and applied by

the Supreme Court of Michigan. Macres v. Coca-Cola Bottling Co., Inc., 290 Mich. 567, 575, 287 N.W. 922; Pattinson v. Coca-Cola Bottling Co., supra, 333 Mich. 253, 262–263, 52 N.W.2d 688. See also: O'Neill v. James, 138 Mich. 567, 101 N.W. 828, 68 L.R.A. 342; State of Md. for Use and Benefit of Woodzell v. Garzell Plastics Industries, Inc., D.C.E.D.Mich., 152 F.Supp. 483.

We do not think that the ruling in Benton Harbor Malleable Industries, Inc., v. Pearson Construction Co., 348 Mich. 471, 83 N.W.2d 429, is a departure from the modern rule. In that case, the piece of machinery which caused the accident had been used by the purchaser for over a year. The trial court sustained defendant's motion for a directed verdict at the conclusion of plaintiff's proof, on the ground that the employee's injury was caused by the failure and negligence of the purchaser, during the year's period while the equipment was in operation, to inspect, repair and maintain it in proper manner. The Supreme Court held that the trial court's conclusion was justified by the evidence and affirmed the ruling. As stated by the Court in MacPherson v. Buick Motor Co., supra, the proximity or remoteness of the relation is a factor to be considered. The ruling involved a question of proximate cause. While proximate cause is ordinarily a question for the jury, Worcester v. Pure Torpedo Co., 7 Cir., 140 F.2d 358, 359, under certain circumstances, as in that case, the undisputed facts may be such as to make it a question of law for the court instead of a question of fact for the jury. Iler v. Seaboard Air Line R. Co., 5 Cir., 214 F.2d 385, 388.

We are of the opinion that under the rule in MacPherson v. Buick Motor Co., supra, it was for the jury to determine in this case whether the defendant in the manufacture and sale of the wire rope owed a duty of care to the plaintiff's decedent, whether there was a failure to perform that duty, and, if so, was such failure the *proximate* cause of his death. Mannsz v. Macwhyte Co., 3 Cir., 155 F.2d 445, 452; Employers' Lia-

**18**

bility Assur. Corp., Ltd. v. Columbus McKinnon Chain Co., D.C.W.D.N.Y., 13 F. 2d 128; O'Donnell v. Geneva Metal Wheel Co., supra.

We do not believe that plaintiff's decedent was contributorily negligent as a matter of law in being where he was at the time of the accident. Foster v. Buckner, 6 Cir., 203 F.2d 527, 530, certiorari denied 346 U.S. 818, 74 S.Ct. 30, 98 L.Ed. 345; Reedy v. Goodin, 285 Mich. 614, 281 N.W. 377.

The judgment of the District Court is reversed and the case remanded for further proceedings not inconsistent with the views expressed herein.