Harold **RUSH** and **Ruby Rush**, Plaintiffs,

v.

**PIERSON CONTRACTING COMPANY,** a **Michigan corporation, Owen-Ames-Kimball Company, a Michigan corporation, and Robert Corrigan, Jointly and Severally, Defendants.**

**Civ. No. 27592.**

United States District Court,
E. D. Michigan, S. D.
March 31, 1970.

Paul A. Rosen, Goodman, Eden, Robb, Millender, Goodman & Bedrosian, Detroit, Mich., for plaintiffs.

John M. Heaphy, Vandeveer, Doelle, Garzia, Tonkin & Kerr, Detroit, Mich., for defendant Pierson Contracting Co.

Lawrence A. Bohall, Martin, Bohall, Joselyn, Halsey & Rowe, Detroit, Mich., for defendant Owen-Ames-Kimball Co.

William D. Booth, Plunkett, Cooney, Rutt & Peacock, Detroit, Mich., for defendant Corrigan.

## OPINION AND ORDER

THORNTON, District Judge.

This is an action for negligence, the plaintiffs, citizens of the State of Indiana, having received personal injuries when their car skidded and crashed while traveling on a highway overpass in the Township of Watervliet, Michigan. Both corporate defendants have moved for summary judgment in their respective favors.

The Amended Complaint of the plaintiffs recites, in part, the following:

"2. Defendant Pierson Contracting Company and Defendant Owen-Ames-Kimball Company, are corporations and are incorporated and have their principal place of business in a State other than the State of Indiana and Defendant, Robert Corrigan, is a citizen of the State of Michigan.

4. That on the 1st day of May, 1965, plaintiff Ruby Rush was driving and plaintiff Harold Rush was a passenger in a 1963 Chevrolet vehicle, Indiana License No. 54A-2448, and were proceeding on Interstate 94 near Hennesseys Road in the Township of Watervliet, Michigan.

5. That at a time prior to the above, the defendants and each of them, designed, built and installed a portion of said highway including a highway overpass at the aforesaid location.

6. That due to the negligence of defendants and each of them, said overpass was designed and/or built in a fashion as to cause danger and hazards to motorists on said highway, including plaintiffs herein.

7. That as a direct and proximate result of the negligent design and/or construction of said overpass, including the installation of the bridge expander plate, angles and connective devices, plaintiffs while driving and riding in said vehicle struck an obstruction or defect created by the defendants' aforesaid faulty design and/or construction, located on the overpass at or near the vicinity of said expander plate, causing plaintiff's automobile to skid and crash."

The defendant Pierson Contracting Company supports its Motion for Summary Judgment with an Affidavit by John S. Pierson, President of the Pierson Con-

tracting Company. This affidavit is to the effect that on September 15, 1960 the work performed by said defendant, in connection with the subject matter of this litigation, was accepted by an official of the State of Michigan. Said affidavit further represents that the Pierson Contracting Company did not do the work on the bridge, but that that work was done by the Owen-Ames-Kimball Company, and that the Pierson Contracting Company did no further work on the project involved in this litigation subsequent to the acceptance of its work by the Michigan State Highway Department. The defendant Pierson Contracting Company further contends, in its Statement of Facts attached to its brief, that:

"The fruits of discovery in the instant cause produced a harvest sufficient to mandate the granting of summary judgment for defendant, on the ground that there is no genuine issue to any material fact and defendant is entitled to judgment as a matter of law, pursuant to Rule 56, as plaintiffs have failed to state a claim against defendant Pierson (Rule 12(b)) upon which relief can be granted as to defendant Pierson. Simply stated, Pierson could not be liable for plaintiffs' injuries since no act of defendant in 1960 could have proximately caused plaintiffs' injuries. And further, defendant Pierson owed no legal duty to plaintiffs, the breach of which caused this injury."

The Motion for Summary Judgment of the defendant Owen-Ames-Kimball Company is supported by an affidavit from Calvin P. Owen, vice-president of Owen-Ames-Kimball Company, which contains the following:

"1. That he is a registered engineer and vice-president of Owen-Ames-Kimball Company, one of the defendants in the above entitled action;

2. That he either has personal knowledge or information from such documentary materials available to him relating to the construction of the bridge and expansion joint involved in this litigation;

3. That Owen-Ames-Kimball Company submitted a bid to Pierson Contracting Company on August 20, 1958, which was incorporated with Pierson's bid to the Michigan State Highway Department, Owen-Ames-Kimball's bid covering the construction of bridges only;

4. That one of the bridges to be constructed by Owen-Ames-Kimball was the one involved in this case, that being the crossing at the Hennessey Road 1.4 miles southeast of Coloma;

5. That Owen-Ames-Kimball's subcontract was dated September 23, 1958, with a completion date of November 1, 1959;

6. That the work was completed on schedule;

7. That the bridge and the expansion joint was constructed in accordance with the plans and specifications of the Michigan State Highway Department;

8. That Owen-Ames-Kimball's work was accepted by the State Highway Department."

The plaintiffs, in their Statement of Facts contained in their brief in opposition to the defendants' motions for summary judgment, allege in part as follows:

"The brige in question was built by fendant Owen-Ames-Kimball and completed in September of 1960. However, the bridge was not opened to the public until 1962.

Within two years, in 1964, after the bridge was opened to the public, the State Highway Department attempted to make repairs upon a bridge expander joint. These repairs were necessitated because of the improper installation and/or fabrication of the expander joint and components thereof. In other words, the expander joint was defective when conveyed to the State. The defendant Owen-Ames-Kimball admits that there is evidence of a defective anchor which may have been a cause of the problem. However, at this

stage of the proceedings, plaintiff cannot be limited to only that proof.[1]

In any event, Defendant Corrigan's crew in 1964 attempted to remedy the situation. This attempt was not successful and again in 1965, Defendant Corrigan's crew attempted to repair the joint. This last attempt occurred just prior to plaintiff's accident.

It should be pointed out that the purpose for an expansion joint is to absorb movement of the concrete portions of the bridge caused by fluctuations in temperature. The joint consists of metal components which are covered by a metal plate. Portions of the joint are also covered by concrete. Thus, for the most part, any defect in the fabrication of parts or in installation of the expansion joint are completely concealed from view.

Interstate 94 is a four lane highway. It is the main highway leading from Detroit to Chicago and points West. According the the State Highway Department, the traffic in 1965 over the bridge in question was approximately 12,600 vehicles per day or 4½ million per year. The legal speed limit on this super highway is 70 miles per hour. When one combines this volume of traffic with the high speeds, any defect in the road creates a situation fraught with grave and imminent danger. In fact, just before the time the plaintiffs struck the expander plate, and blew out their tire, another person hit it and a truck was seen in the vicinity with its tires being repaired.

The expander plate cannot be repaired in the same way an automobile or a machine can. If one has difficulty with an automobile or machine, he may take it out of use. However, the section of highway wherein is located the expander plate, cannot be taken out of use. Because it is a bridge, there is little or no possibility of detouring traffic around the area. Instead, one lane of traffic traversing the joint remains open while the other lane is worked upon. Thus, at all times, traffic is moving over a portion of the expander joint. Plaintiff alleges that both defendant Pierson and defendant Owen-Ames-Kimball knew or should have known that any defect in fabrication or installation of the joint would create grave and imminent threats of extraordinary danger to the public. Moreover, both of these defendants knew from the very nature of the structure that such defects could not have been seen and that repairs would be attempted under circumstances not conducive to success."

From the defendant Pierson the Court has the following for consideration in determining the motion:

"Issue I: Did defendant Pierson, a contractor of a portion of I–94, under a contract with the Michigan State Highway Department in 1958–60, owe a duty to the plaintiffs allegedly injured while traveling on said road and an adjacent bridge in 1965?

Defendant contends that, as a matter of law, this question must be answered, No.

\* \* \* \* \* \*

ISSUE II: Do the plaintiffs have a cause of [action] against defendant Pierson five (5) years after the work contracted for between defendant and the state had been accepted by the latter?

Defendant submits that this question must be answered, No."

---

1. Defendant Corrigan testified that of the more than 200 expander plates on Interstate 94 in Southwestern Michigan, only two other expansion joints created difficulty. (Corrigan dep. 59) Plaintiffs' proofs will indicate that an expansion joint is a sturdy structure with a much greater longevity than the surrounding road surface. Moreover, as this highway is built, in part with Federal funds, Congress required that construction standards be formulated so as to adequately permit the vehicular traffic for a period of 20 years. 23 U.S.C.A. § 109(b). In other words, as fabricated and installed, this expander plate fell 18 years short of the 20 year standard.

As a further part of its Motion for Summary Judgment the defendant Owen-Ames-Kimball Company presents the following for the Court's consideration:

"QUESTION INVOLVED

IS A BRIDGE CONTRACTOR LIABLE TO THIRD PERSONS, NOT PARTIES TO THE CONTRACT, FOR DAMAGES RESULTING FROM ITS ALLEGED NEGLIGENT CONSTRUCTION OR DESIGN WHERE ITS WORK WAS DONE IN STRICT COMPLIANCE WITH THE REQUIREMENTS AND SPECIFICATIONS OF THE STATE HIGHWAY DEPARTMENT, ITS WORK HAD BEEN COMPLETED, APPROVED AND ACCEPTED SEVERAL YEARS BEFORE THE ACCIDENT FOR WHICH DAMAGES ARE CLAIMED AND THE STATE, IN DISCHARGE OF ITS RESPONSIBILITY FOR HIGHWAY MAINTENANCE, HAD MADE REPAIRS IN THE INTERVAL TO THE STRUCTURE CLAIMED TO HAVE BEEN DEFECTIVE?

Defendant OWEN-AMES-KIMBALL contends that this question should be answered 'No'."

The answers to the three issues and/or questions posed above are found in Jacobs v. Martz, 15 Mich.App. 186, 190–192, 166 N.W.2d 303, 305–306:

"The state of the law as respects the liability of a contractor is extensively discussed in defendant's brief, all of it aiming at the contention that defendant is not liable for his actions in the instant case. We feel, however that it is sufficiently settled that the State of Michigan follows the so-called 'modern' rule when it comes to the construction or manufacture of a thing that is 'reasonably certain to place life and limb in peril when negligently made.' Hale v. Depaoli (1948), 33 Cal.2d 228, 201 P.2d 1, 13 A.L.R.2d 183, citing MacPherson v. Buick Motor Company (1916), 217 N.Y. 382, 111 N. E. 1050, L.R.A.1916F. That Michigan follows this rule was established in Benton Harbor Malleable Industries,

Inc. v. Pearson Construction Company (1957), 348 Mich. 471, p. 475, 83 N.W. 2d 429, p. 430, in the following words:

'The decided weight of authority supports the proposition that where an independent contractor has done work on an instrumentality, and by his work makes the instrumentality imminently dangerous to those he knew would use it, he remains liable, even after the completion of his work and its acceptance by the contractee, to third persons injured as the result of his negligence, if the contractor knew, or in view of the peculiar circumstances of the case should have known, the dangerous condition by him created, and the contractee had no knowledge of the dangerous condition or defects, which was so concealed that reasonable inspection by the contractee would not have discovered it.' * [* Footnote omitted.]

A matter which perhaps deserves a bit of discussion *obiter* relates to the length of time (7 years) which elapsed from the construction of the the fireplace to the injury complained of. A succinct discussion of this aspect is found in Prosser, Law of Torts, § 50, Unforeseeable Consequences. Therein it is stated (p 291):

'The New York courts have attempted to set an arbitrary rule, in terms of what is foreseeable, by requiring that the consequences be not too far removed in time or space from the defendant's conduct. * * * All other jurisdictions have rejected any such attempt to fix a rule. Remoteness in time or space undoubtedly has its importance in determining whether the defendant has been a substantial factor in causing the harm at all, and may well lead to the conclusion that he has not; or it may give rise to the likelihood that other intervening causes have taken over the responsibility. But when causation is found, and other factors are eliminated, it is not easy

to discover any merit whatever in the contention that such physical remoteness should of itself bar recovery.'

Our Supreme Court, when called upon to rule on the remoteness issue, stated in Parks v. Starks (1955), 342 Mich. 443, 70 N.W.2d 805, 'no authorities are cited by defendant in which it is held that the mere lapse of time between defendant's negligence and plaintiff's resultant injuries will serve to transform that which otherwise would be a proximate cause into a remote cause excusing defendant from liability.' The court further quotes from 38 Am.Jur., Negligence, § 55, p. 703:

'The proximate cause of an injury is not necessarily the immediate cause; not necessarily the cause nearest in time, distance, or space. Assuming that there is a direct, natural, and continuous sequence between an act and an injury, * * * the act can be accepted as the proximate cause of the injury without reference to its separation from the injury in point of time or distance.'

The trial court, in concluding its opinion, recognizes this aspect of the instant case in the following words:

'In completing the construction of this fireplace, or in directing its completion, Martz knew, or should have known, that it was to be a part of a basement recreation room in a home—a room to be used for recreational purposes, particularly by children. He knew, or should have known, that others besides himself would be using the room, including members of his family and guests of his, and future occupants of the home and their guests. He knew, or should have known, by the exercise of reasonable care, that completing the construction of the fireplace in the manner in which it was completed would put all future occupants

of this room in danger should they, in the course of their activities, exert a downward or outward pressure on the mantel of the fireplace in a normal manner and under otherwise normal conditions.

It is the conclusion and decision of this Court that Martz was negligent, and that his negligence was the direct and proximate cause of the injuries to the plaintiff minor.' "

Defendant Robert Corrigan, in his deposition, identifies himself as an employee of the Department of State Highways for 18 years, and as a maintenance supervisor in District 7. While in the course of his employment he had occasion to supervise work in connection with the Hennessey Road bridge, once in 1964 and once in 1965, in regard to repairing an expansion dam. Fifteen pages of Mr. Corrigan's deposition[2] are devoted to questions and answers describing an expansion dam, its function, its construction and its installation. From this description the Court concludes that the question of whether or not the corporate defendants, or either of them, were negligent in designing the overpass and installing the bridge expanding plate, the angles and/or the connecting devices, presents complicated and technical factual matters. When you add to the foregoing the question whether or not the defendants knew or should have known of any defects arising from the original installation and construction of the overpass and the expansion dam, or if any defect did in fact exist, you are adding to the complexity of the problem and you have a controversy that should be exposed to complete factual testing from competent witnesses at a trial. Such matter should not be disposed of by summary judgments. In Columbus Services, Inc. v. Preferred Building Maintenance, Inc., et al., 398 F.2d 80 (C.A. 6, 1968), the Court of Appeals for the Sixth Circuit admonishes the trial court as follows:

"After due consideration of the briefs and arguments the Court is of the opin-

2. Corrigan Deposition Transcript, pp. 7–21.

ion that the conclusions of the District Court cannot be substantiated without more fully exploring the factual problems which underlay the legal conclusions. Factual problems as to whether the plaintiff's business in Michigan was intrastate or whether it had interstate aspects of importance, the underlying facts on the basis of which covenants not to compete must be judged, the necessary facts to require adjudication of the trade secrets issues, and others, are matters which can best be resolved only after a full inquiry into the facts upon trial of the merits.

'This Court has on several occasions expressed the view that a trial judge should be slow in disposing of a case of any complexity on a motion for summary judgment, that while such a judgment wisely used is a praiseworthy and timesaving device, yet such prompt dispatch of judicial business is neither the sole nor the the primary purpose for which courts have been established, and that a party should not be deprived of an adequate opportunity to fully develop his case by witnesses and a trial, when the issues involved make such procedure the appropriate one. (Citations omitted).

It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts, or whether an estoppel or a waiver of certain rights admitted to exist should be drawn from such facts. Under such circumstances the case is not one to be decided by the Trial Judge on a motion for summary judgment.' S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F. 2d 235, 237–238 (6th Cir. 1963).

We are of the opinion that this case requires a full inquiry into the facts under the usual trial procedure. From the record before us we cannot say that it is clear that 'there is no genuine is-

sue as to any material fact.' Accordingly, the judgment entered below is vacated and the case is remanded for proceedings consistent with this opinion; in so remanding we express no judgment on either the validity or the fairness of the contract."

In addition to the foregoing, the Court of Appeals for the Sixth Circuit in Rogers v. Peabody Coal Company, 342 F.2d 749, 751 (C.A. 6, 1965) further advises the trial judge as to the consideration that should be given to a motion for summary judgment, in the following language:

"Summary judgment should be granted only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is and no genuine issue of fact remains for trial. The purpose of the rule is not to cut litigants off from the right to trial by jury if they really have issues to try. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944).

In the instant case, plaintiff seeks recovery based upon defendant's alleged negligence. This Court has previously noted that there is eminent authority in support of the proposition that issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner. Aetna Insurance Company v. Cooper Wells & Company, 234 F.2d 342, 344 (6 Cir. 1956), citing 6 Moore's Federal Practice (2d ed.) § 56.17 [42] at p. 2232 and cases cited at note 4 therein. It is only in the exceptional negligence case that the rule should be invoked. Furlong v. Stichman, 24 F.R.D. 400 (D.C.S.D.N.Y. 1959). And even where the trial judge reasonably may surmise that plaintiff is unlikely to prevail upon a trial, that is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them. Harl v. Acacia Mutual Life Insurance Company, 115 U.S.App.D.C. 166, 317 F.2d 577, 580 (1963) citing with ap-

proval Sprague v. Vogt, 150 F.2d 795, 801 (8 Cir. 1945).

We are of the opinion that this case requires a full inquiry into the facts under the usual trial procedure. From the record before us we cannot say that it is clear that 'there is no genuine issue as to any material fact.' Accordingly, the judgment entered below is vacated and the case is remanded for proceedings consistent with this opinion."

The defendant Pierson also claims that the action is barred by the Statute of Limitations, and in support of said claim presents the following:

> "Guaranty Trust Co. v. York, 326 U.S. 99 [65 S.Ct. 1464, 89 L.Ed. 2079] (1945), requires this Court to apply, in diversity actions, the Statute of Limitations of the forum. This requirement mandates reference to the various relevant Michigan statutory provisions, *inter alia*, C.L.S.1961, § 600.5827, M.S.A. § 27A.5827, which reads:

>> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

> The Statute of Limitations, C.L. 48, § 600.5805; M.S.A. § 27A.5805, provides in subsection (7) thereof:

>> The period of limitations is 3 years for all other actions to recover for injuries to persons and property.

> It is apparent from plaintiffs' Complaint that the wrong alleged and upon which plaintiffs' claim is based, accrued, if at all, on or before the acceptance date of September 15, 1960, as shown by the Affidavit and letter attached (Exhibit "A"). It is, therefore, barred by the Statute of Limitations."

The plaintiffs in their brief concede that the period of limitations is three years in this type of action. However they deny that the Statute of Limitations bars their action. In Prosch v. Yale, D.C., 306 F.Supp. 524 (1969) Judge Talbot Smith, of this Court, has determined the impact of section 600.5827 of the Michigan Compiled Laws upon personal injury claims as follows:

> " * * * *

> So it is in the case before us. Negligence involves a relationship. Without that relationship, there is no tort. The tort we have under consideration involves interference with one's bodily security. Historically, it grew out of the action on the case. Thus under the gravamen of the pleadings before us there was no tort, no wrong (to use the words of the statute) until bodily security had been invaded.

> * * * * * *

> We return to our starting point: the word 'wrong' is the key. In personal injury actions arising out of negligence we have no 'wrong' until plaintiff shows a violation of his right to bodily security. This interpretation is consonant with the purpose of a statute of 'limitations'. Otherwise construed, the statute does not merely limit the bringing of a cause of action that has at one time accrued, which is the purpose of limitations. It simply abolishes the cause of action. Such a construction is completely inconsistent with applicable precedent, it postulates an absurdity, namely, that an event is over before it happens, and, moreover, attributes to our great coordinate branch of government, the legislature, an intent at variance with known benign and humanitarian public acts."

We adopt the opinion of Judge Smith and conclude that the claim of defendant Pierson that the plaintiffs' action is barred by the Statute of Limitations is without merit.

The motions of the defendants Pierson Contracting Company and Owen-Ames-

Kimball Company for summary judgments are denied.

Defendant Corrigan's Motion to Dismiss is also before the Court for determination. He moves in the alternative for summary judgment. Briefs have been submitted to the Court by defendant Corrigan in support of his motion and by plaintiffs in opposition thereto. Corrigan was "a foreman or supervisor employed by the State of Michigan, Highway Division." Concerning plaintiffs' cause of action against Corrigan, COUNT II of plaintiffs' Amended Complaint, paragraphs 4 and 5, alleges as follows:

"4. That in 1964 and 1965, Defendant Corrigan, as supervisor or foreman, supervised and instructed certain repair work being done to the aforesaid expander plate and adjacent roadway and was negligent in so doing.

5. That the negligence of defendant Corrigan consisted of the following, among others:

(a) Failure to properly supervise the work done in both 1964 and 1965 on said portion of the highway;

(b) Failure to adequately test or inspect the work being done to insure that said area was safe for vehicular traffic;

(c) Failure to warn or instruct others to warn the travellers on the roadway of the dangers inherent in the repaired area."

The ground on which defendant Corrigan bases his motion is that of immunity. In his brief defendant Corrigan claims that he "enjoys the same immunity that his employer, an agency of the State of Michigan, enjoys." Plaintiffs allege, and defendant Corrigan agrees that he "was an employee of the Department of State Highways, an agency of the State of Michigan." That the State of Michigan (including its agencies) was immune from suit at the time of this accident is not questioned by plaintiffs. That there has been enabling legislation passed by the State Legislature waiving such immunity is not questioned by defendant Corrigan. M.S.A. § 3.996(102) [M.C.L.A. § 691.1402] so provides. The section, however, contains the following provision:

" * * * No action shall be brought against the state under this section except for injury or loss suffered on or after July 1, 1965."

For defendant Corrigan to be dismissed from this suit at this posture of the case on the ground of immunity, he must show that the immunity of his employer protects him also. The allegations of negligence on the part of defendant Corrigan, as set forth in plaintiffs' Amended Complaint, can only read as alleging active, personal negligence on his part. In this light he must be held accountable for his own acts of commission or omission, if such acts are in fact negligent. It seems to us to be that simple. Defendant Corrigan has not cited to us any authority to the contrary. That an employee of a governmental agency is liable for his own negligent acts seems to us to be implicitly recognized in M.S.A., § 3.996(108) [M.C.L.A. § 691.1408] which reads as follows:

"§ 3.996(108) [Attorney's services, fees; settlement or payment of claim; indemnification of officers and employees.] SEC. 8. Whenever any claim is made or any civil action is commenced against any officer or employee of any governmental agency for injuries to persons or property caused by negligence of the officer or employee while in the course of his employment and while acting within the scope of his authority, the governmental agency is authorized, but not required, to pay for or engage or furnish services of an attorney to advise the officer or employee as to the claim and to appear for and represent the officer or employee in the action and the governmental agency may compromise, settle and pay such claim before or after the commencement of any civil action. Whenever any judgment for damages is awarded against any officer or employee of any governmental agency as

a result of any civil action for personal injuries or property damage caused by the officer or employee while in the course of his employment and while acting within the scope of his authority, the governmental agency is authorized, but not required, to indemnify the officer or employee or pay, settle, or compromise the judgment. Nothing in this section shall be deemed to impose any liability on any governmental agency."

Defendant Corrigan has not cited, nor has our research disclosed any reported decision where an employee of a state or of a state agency was held to enjoy his employer's immunity from suit for his own acts of personal or active negligence performed within the scope of his employment. We have been directed to no statutory enactment extending immunity to such an employee.

Defendant Corrigan's Motion to Dismiss is denied.